No. 2,068.

## SNODGRASS ET AL. *v.* SWEETSER ET AL.

BANKS AND BANKING.—*Presumption of Genuineness of Checks and Drafts.—Custom of Customers.*—A banker who knows the custom of his customers in drawing checks and drafts, has a right to assume, nothing appearing to the contrary, that all checks and drafts drawn in that manner are genuine.

SAME.—*Checks and Drafts.—Signature.*—The banker must, at his peril, see that the signature is genuine, but he is not bound to ascertain and know that such customer personally filled out or wrote the check.

SAME.—*Signed Check Stolen, Filled Out and Cashed.—Negligence of Agent.—Liability of Principal.*—A person who signs blank checks, and puts them in possession of his agent to be filled out by the agent and used as needed in the prosecution of the principal's business, will be required to reimburse the bank for such a check, which was stolen, by reason of the agent's negligence, and filled out and cashed by the person named as payee therein.

SAME.—*Signed Check Stolen, Filled Out and Cashed.—Estoppel.*— The person thus signing the blank checks is estopped, as between herself and the bank which cashed the check, by reason of her negligence, from setting up that it was stolen and the name of the payee and amount inserted without her knowledge or consent.

From the Grant Circuit Court.

*G. W. Harvey* and *A. DeWolf*, for appellants.

*W. H. Carroll* and *G. D. Dean*, for appellees.

ROSS, J.—This action was commenced by the appellees, against the appellant, Florence B. Snodgrass, to recover an alleged balance due upon an account. The pleadings were a complaint and an answer thereto of general denial, and a cross-complaint and an answer thereto in four paragraphs, as follows: First, a general denial; second, payment; third, settlement; and fourth, set-off. To the affirmative answers to the cross-complaint there was a reply of general denial.

The cause was tried by the court, and a special find-ing of facts made, with conclusions of law thereon. The only question urged on this appeal is, as to the correctness of the conclusions of law drawn by the court from the facts found.

The facts found by the court, with the conclusions of law thereon, are as follows:

"1.    The plaintiffs, George Sweetser, Philip Mat-ter, James V. Sweetser, and George Webster, Jr., are partners under the name of the Marion Bank, and are doing a general banking business. They succeeded to all the rights and privileges, and became liable for all the debts and obligations, of George Sweetser, Philip Matter, James V. Sweetser, and Joel G. Sayre, late partners under the name of the Marion Bank.

"2.    The defendant, Florence B. Snodgrass, during the time the accounts named in the complaint, cross-complaint, and answers thereto, were accruing, was doing business under the name of Snodgrass & Co., in buying and selling grain.

"3.    Said Snodgrass & Co., during the time covered by the pleadings, made with the Marion Bank, at sundry times, deposits, specified in defendant's cross-complaint, amounting to $91,249.33. During the same period, the Marion Bank paid sundry checks drawn by Snodgrass & Co., with sundry items of in-terest and exchange specified in the complaint, amounting to $91,075.78, not including the four items mentioned in the seventh finding. Said amounts of $91,249.33 and $91,075.78 are correct.

"4. F. M. Stillwell was the agent of Snodgrass & Co. Checks drawn in blank on the Marion Bank, signed with the genuine signature of Snodgrass & Co., were furnished to said Stillwell to be used by him in the purchased of grain for Snodgrass & Co. Stillwell had authority to fill up said checks by inserting the name

of the payee and the amount to be paid. Before issuing said checks, Stillwell was to sign the same. This arrangement was understood by the Marion Bank. On the 8th day of August, 1889, certain of such checks were in the possession of said Stillwell, signed with the genuine signature of Snodgrass & Co., for the purpose already stated. On said day said Stillwell, having occasion to be absent from his place of business at Swayzee, signed a number of such checks with his name, and left them with his clerk, to be used, if necessary, in the purchase and payment of grain, in his (Stillwell's) absence. He was absent from about 8 o'clock a. m. until about 10 o'clock of said day. During his absence, said checks were left in the office of said Stillwell, and were contained in a book which was in or on a desk which was not locked, nor was the office door locked. Said clerk was not in the office during all the time when Stillwell was absent on said day. During said day, one of said checks was abstracted by some unknown person. It was filled up so that the sum called for by the check was $210.00, and was made payable to one William Legg. Said check was presented at the plaintiffs' bank for payment by a person representing himself to be William Legg, payee. He was a stranger to the plaintiffs and their employes in the bank. At the suggestion of the cashier, the said person endorsed the name of William Legg on said check, which was then paid by the plaintiffs, and charged in the account against Snodgrass & Co. Said check, except as to the signatures of Snodgrass & Co. and F. M. Stillwell, was a forgery. The said check, taken from the office of said Stillwell, on the 8th day of August, 1889, and paid by said bank, was like all other checks drawn by the defendant through her agent Stillwell on the plaintiffs' bank. The payment of said check caused the over-draft men-

tioned in the seventh finding, upon which the item of interest of $2.19 in said finding is charged.

"5.   Snodgrass & Co. bargained a carload of corn to a party in Boliver, Ohio, and shipped the corn to that place to the order of Snodgrass & Co., taking from the railroad company a bill of lading for the same.   On the 23d day of May, 1890, Snodgrass & Co. negotiated and endorsed to the plaintiffs, a draft for $178.46, drawn on the purchaser of said corn, for the price thereof, to which draft said bill of lading was attached, and the plaintiffs gave the defendant credit for the amount of said draft.   The Marion Bank sent the draft to Boliver, Ohio, for collection, and it was paid by the drawee to the express company, which was acting as the collecting agent.   While the money was in the hands of the express company, certain parties in Ohio commenced an action before a justice of the peace against Snodgrass & Co., and instituted attachment proceedings, and garnisheed the express company in said action.   Snodgrass & Co. were not personally served with process, and did not appear in said action before said justice.   Notice was given by publication, as required in case of non-resident defendants.   Judgment in attachment was rendered in said action by said justice against Snodgrass & Co. Said judgment was appealed from by Snodgrass & Co., to the Common Pleas Court of Tuscarawas county, Ohio; and the case was afterward compromised by Snodgrass & Co. and the other parties to said action, in said Common · Pleas Court, upon the following terms:   That said justice should pay over to the clerk of said court, the sum of $178.47, deposited with said justice by said garnishee, and that said clerk should pay to said justice his costs in said action, taxed at $16.80, and retain his own costs in said action, taxed at $3.67, and, out of the remainder, pay the plaintiffs in

said action their judgment of $70.39 and $7.50 expenses, and pay the residue, being $80.11, to said Snodgrass & Co. And the Marion Bank received on account of said draft, $66.96, and charged the difference, $111.50, to Snodgrass & Co., February 16, 1891, and at the same time charged Snodgrass & Co. $6.76 interest on said difference, which had accrued on said difference up to said last named date.

"6.    October 11, 1889, February 7, 1890, March 26, 1890, and May 10, 1890, statements of all accounts by and between the parties, and balances were made out and presented to Snodgrass & Co., at each of said times, and that interest on over-drafts was charged to the defendant in such balances, and was not objected to by the defendant. Each of these statements and balances contained and included all matters of accounts by and between said parties prior to said dates, and subsequent to the prior statement. The defendant did not object to the statement of account when the balance was made and shown to Snodgrass & Co., containing the charge of $210.00, paid on the check to William Legg. Snodgrass & Co. had, previous to that time, objected to that payment.

"7.    The account of the Marion Bank against Snodgrass & Co., in addition to the items composing the $91,075.78, includes the following four items: $210.00 paid August 8, 1889, by the bank on the forged check mentioned in the fourth finding, and $2.19 interest accrued thereon up to February 16, 1891, on an over-draft occasioned by the payment of said check; also the $11.50 difference on draft and $6.76 interest accrued thereon up to February 16, 1891, mentioned in the fifth finding.

"8.    For, and on account of the items contained in the complaint, the defendant, during the period cov-

ered by the pleadings in this case, became indebted to said Marion Bank in the following amounts, to-wit:

To amount specified in third finding . . . . . . . $91,075.78

To amount paid on said check specified in the fourth and seventh findings . . . . . . . . .   210.00

To interest accrued on over-draft occasioned by said check of $210.00, mentioned in the fourth and seventh findings . . . . . . . . . . .     2.19

To difference on draft mentioned in the fifth and seventh findings . . . . . . . . . . . . . . . . . .   111.50

To interest accrued on said difference in said fifth and seventh findings . . . . . . . . . .     6.76

Making total indebtedness accrued to plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . $91,406.23

And during the same period, said Marion Bank, on account of the items set out in the cross-complaint, became indebted to defendant in the amount specified in said third finding, to-wit . . . . . . . . . . . . . . . . . . $91,249.33

Leaving a balance of indebtedness due from defendant to said Marion Bank . . . $   156.90

"And as a conclusion of law, upon the facts aforesaid, the court finds that the defendant is liable to plaintiffs in this action, for said balance of $156.90; and that the plaintiffs in this action ought to recover, of and from the defendant herein, the said sum of $156.90."

It is insisted, on the part of the appellant Snodgrass, that the check mentioned in the fourth and seventh findings was a forgery, and that the appellees having paid it, they must suffer the loss.

It is true, that the check, as presented to and paid by the appellees, was never executed by the appellant to the person designated, or for the amount stated

therein. Many cases have been cited by counsel in support of the proposition that such an instrument is a forgery as between the supposed drawer and the payee, but the question that confronts us is this: Was it a forgery, as between the appellant Snodgrass and the appellees, so that the loss in its payment by the appellees must be borne by them, and not by the appellant?

The facts found, disclose that the appellant was in the habit of, and did attach her business signature to blank checks, which were delivered to Stillwell, her agent, who had the power and was authorized to fill in with the name of a payee and for such amounts as he saw fit, or was necessary in carrying on the business which he was then transacting for her; the appellees knew that such was the custom of the appellant in doing business. One of these blank checks, after it had been signed and delivered to said Stillwell, was stolen from him, the name of a payee and the amount to be paid inserted. When it was presented at the bank of the appellees for payment, the party presenting it endorsed on the back thereof the name of the payee designated in the check, and the amount called for was paid him.

The relationship between a banker and customer is created by their own contract, the banker being bound to honor the customer's checks or drafts so long as he may have money sufficient to his credit in the former's hands to do so. If the banker knows the custom of his customers, in drawing checks and drafts, he has a right to assume, nothing appearing to the contrary, that all checks and drafts drawn in that manner are genuine. No doubt the banker must, at his peril, see that the signature is genuine, but he is not bound to ascertain and know that such customer personally filled in or wrote the check.

When the appellant Snodgrass signed and delivered to her agent, Stillwell, the blank checks, she was bound to know that they were liable to be lost or stolen, and that if they fell into the hands of unscrupulous* or dishonest persons, might be filled in with the name of a payee, a definite sum, and presented to the appellees for payment.

It is well settled as a general rule, that the payment of a forged check, draft, or order, must be borne by the party paying it. But when the party disavowing the obligation has been guilty of negligence, which is the immediate and direct cause of misleading the payor into paying it, he must reimburse such payor, for his act or omission was the cause that induced its payment. It was appellant's own negligence, whether her own individually, or that of her agent, that caused the appellees to part with their money, and she should reimburse them for what she, by her negligence, induced or led them to pay out. Reason and principle require that if one person, by his negligence, causes or induces another to pay out money for his benefit, he should reimburse such person for the amount so paid out. This rule is especially applicable as between the parties to this action, as disclosed by the facts found by the court. By her signature to the check she, in effect, vouched for its genuineness, and she is estopped, as between herself and the appellees, by reason of her negligence, from setting up that it was stolen, and the name of the payee and the amount inserted without her knowledge or consent. It was her own negligence that brought about the loss, and she must suffer for it.

There is nothing in the contention of the appellant, that she should have credit for the entire amount of the draft deposited with the appellees May 23, 1890,

referred to in the fifth finding, for it appears that by her own act and consent the bank received but $66.96. That is all the bank is chargeable with, because that was all of appellant's money which they received. The balance of the draft was disposed of by appellant herself, and it never reached the hands or custody of the appellees.

We find no error in the record warranting a reversal of the judgment of the court below.

Judgment affirmed.

Filed September 22, 1896.