HUGH MARTIN v. STATE OF INDIANA.

[No. 669S144. Filed March 1, 1972. Rehearing denied April 5, 1972.]

*Michael Riley,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Michael Schaefer,* Deputy Attorney General, for appellee.

HUNTER, J.—This is an appeal by Hugh Martin, appellant (defendant below), from a conviction for Infliction of Physical Injury While in Commission of Robbery. Appellant was initially charged by affidavit on November 17, 1967, and, after being tried to the Court, the trial Court granted appellant's Motion for New Trial. On March 5, 1969, appellant's second trial commenced and after trial to the Court, appellant was found guilty. On March 7, 1969, appellant was sentenced to the Indiana State Prison for life. On March 18, 1969, appellant filed a Motion for New Trial which was overruled. On January 4, 1971, appellant's Petition for a Belated Appeal was granted and this appeal followed.

Appellant has asserted two main contentions of error. First, he claims it was error for the trial court to overrule his motion to strike the testimony of the victim concerning the victim's in-court identification of appellant. Appellant contends the in-court identification was tainted by a pre-trial confrontation at which time appellant was not represented by counsel, in violation of his constitutional rights, and that the in-court identification did not have a sufficient independent source to be purged of the taint from the pre-trial confrontation. Appellant's second allegation is that there was a lack of sufficient evidence upon which to base a conviction.

We shall turn first to appellant's contention concerning the pretrial identification. It was an admitted fact that a pre-trial

lineup was conducted during which appellant was not represented by counsel. Appellant also makes a claim, unrefuted by the State, that he requested the presence of an attorney and was refused. It is now well established that the Sixth Amendment right to counsel requires that, absent an intelligent waiver, the accused has the right to the presence of counsel during a lineup where the lineup is a critical stage of the prosecution. *United States* v. *Wade* (1967), 388 U. S. 218; *Gilbert* v. *California* (1967), 388 U. S. 263. Clearly, a post-arrest lineup where the investigation has focused on the accused should be considered a critical stage of the prosecution. In fact, it is stated in *Stovall* v. *Denno* (1967), 388 U. S. 293, 298:

> "We have outlined in Wade the dangers and unfairness inherent in confrontations for identification. The possibility of unfairness at that point is great, both because of the manner in which confrontations are frequently conducted, and because of the likelihood that the accused will often be precluded from reconstructing what occurred and thereby from obtaining a full hearing on the identification issue at trial. The presence of counsel will significantly promote fairness at the confrontation and a full hearing at trial on the issue of identification. We have, therefore, concluded that *the confrontation is a 'critical stage,' and that counsel is required at all confrontations.*" (our emphasis)

We have granted one exception upon this rule laid down in *Stovall.*

> "[T]his Court has held that an on-the-scene confrontation between a witness and a suspect conducted within a reasonably short time after the commission of the crime for the purpose of determining whether the witness can identify the suspect is not within the scope of the Wade-Gilbert rule. *Parker* v. *State* (1970), 254 Ind. 593, 261 N. E. 2d 562; *McPhearson* v. *State* (1970), 253 Ind. 254, 253 N. E. 2d 226; *Lewis* v. *State* (1969), 252 Ind. 454, 250 N. E. 2d 358." *Dillard* v. *State* (1971), 257 Ind. 282, 274 N. E. 2d 387, 389.

It is apparent in this case that appellant was denied his right to counsel guaranteed by the Sixth and Fourteenth Amend-

ments of the Constitution of the United States and Article 1, Section 13 of the Constitution of Indiana as the lineup took place after his arrest for this offense. However, where admissibility of evidence as to the lineup itself is not involved, a *per se* exclusionary rule is not justified. Such is the case in this instance. The State asked no questions of the witness concerning the lineup on direct examination and no mention was made of the lineup until cross-examination of the witness by defense counsel. *United States* v. *Wade, supra,* holds that the government is required to establish by clear and convincing evidence that the in-court identifications of the defendant were based upon identifications other than that at the lineup. Several factors were mentioned upon which to base this determination. They are as follows:

(1) Prior opportunity to observe the alleged criminal act;
(2) Existence of any discrepancy between any prelineup description and the defendant's actual description;
(3) Any identification of another person prior to the lineup;
(4) Identification of defendant by picture prior to lineup;
(5) Failure to identify the defendant on a prior occasion;
(6) Lapse of time between the alleged act and the lineup description;
(7) Those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup. See *United States* v. *Wade, supra,* 388 U. S. at 241.

How these factors apply to the case at bar is not self-evident as there was no hearing on this issue and the only evidence in the record is the cross-examination and redirect examination of the identifying witness and the examination of the appellant. However, the record does shed a certain amount of light on the issue. First, the witness did have an opportunity to observe the appellant in the course of the robbery. The witness was the attendant at a service station which was robbed, and in the course of the robbery the witness was shot. The robbery took between ten and twenty minutes and neither of the two robbers was wearing a mask. However, a

large portion of this time was consumed in a scuffle in which the witness was dragged into a restroom and shot. There is no evidence as to exactly how good an opportunity the witness had to observe the appellant. Next, there existed discrepancies between the description of the appellant given by the witness and his actual description. The witness stated that appellant was the shorter of the two men who committed the robbery but it was demonstrated at trial that appellant was taller than a man who had admitted being the accomplice in the crime. The witness stated that the man who shot him was a dark skinned Negro, and a police officer testified at trial that he would describe appellant as a light skinned Negro. Prior to the lineup the witness was shown fifteen to twenty photographs and indicated that a number of them looked like the man who shot him. It is not clear from the record exactly what day the lineup took place but it occurred at least three months after the crime was committed. There was also testimony indicating a strong possibility the lineup was conducted in an overly suggestive manner. The witness testified that the only member of the lineup he could remember wearing a jail uniform was the appellant. The appellant who is a Negro, five feet seven inches tall, and about thirty-five years old testified that of the approximately twelve people in the lineup the only other negro was five feet three inches tall and eighteen years old.

From the foregoing it seems there is evidence which might support a finding that the in-court identification had an independent source but there is also evidence tending to show the in-court identification was tainted by the lineup identification. The only reasonable solution in such an instance would appear to be a hearing which would focus its attention on this one subject so that the source of the identification could be adequately determined and would not simply be another extraneous ruling on an objection in the course of a trial. Certainly there can be cases in which a determination could be made from the record without the need for a hearing on the subject

but this seems feasible only where the issue is clearly established one way or the other. In a situation such as exists in the instant case too many questions remain unasked and unanswered to make an intelligent and just determination of this issue.

However, there is no need to remand the case if, assuming arguendo the denial of the motion to strike was error, there was other evidence present to clearly identify the accused.

> "[T]he cases written by the Supreme Court of the United States on this subject do not require a reversal of the case, if it is clearly demonstrated that notwithstanding irregularities in pre-trial lineup there is positive in-court identification of the accused, which identification in no way depends upon observations made of the accused during the improper lineup." *Fulks* v. *State* (1970), 255 Ind. 81, 86, 262 N. E. 2d 651, 653.

Such is the case here. A witness in the case at bar admitted being an accomplice in the robbery and unequivocally identified the appellant as the other robber and as the man who shot the attendant. An accomplice is a competent witness and a person may be convicted on the uncorroborated testimony of an accomplice. *Glover* v. *State* (1970), 255 Ind. 304, 263 N. E. 2d 723; *Couch* v. *State* (1965), 246 Ind. 531, 207 N. E. 2d 365. Thus, even without the in-court identification of the appellant by the victim the evidence is sufficient for the judge of the trial court, as the trier of fact in this case, to find that the identification of the appellant was established.

The appellant's second contention is that the evidence is insufficient to sustain the verdict. We cannot agree with this assertion. The statute involved is IC 1971, 35-13-4-6 (Ind. Ann. Stat. § 10-4101 [1956 Repl.]) which reads as follows:

> "Whoever takes from the person of another any article of value by violence or by putting in fear, is guilty of robbery, and on conviction shall be imprisoned not less than ten [10] years nor more than twenty-five [25] years, and be disfranchised and rendered incapable of holding any office

of trust or profit for any determinate period. Whoever inflicts any wound or other physical injury upon any person with any firearm, dirk, stiletto, bludgeon, billy, club, blackjack, or any other deadly or dangerous weapon or instrument while engaged in the commission of a robbery, or while attempting to commit a robbery, shall, upon conviction, be imprisoned in the state prison for life."

It was clearly established that money belonging to an oil company was taken from the person of a service station attendant who was the agent of the oil company. The money was taken by two men, one of whom had a revolver and the other a sawed off shotgun. The attendant testified that he was, in his words, "scared stiff." In the course of the incident, a scuffle occurred during which the man with the shotgun shot the attendant. A witness, who admitted being one of the robbers, testified that it was appellant who was the other robber, it was appellant who was carrying the shotgun and it was appellant who shot the attendant. All the elements of the crime were established and there was sufficient evidence to indicate that appellant was the perpetrator of the crime.

For all the foregoing reasons the judgment of the trial court is affirmed.

Judgment affirmed.

Arterburn, C. J. and Givan, J., concur, DeBruler, J., concurs in part and dissents in part with opinion; Prentice, J., dissents with opinion.

### Concurring and Dissenting Opinion

DeBruler, J.—I concur with the majority's excellent analysis of the issues involved in a pre-trial confrontation between a witness and an accused which occurs without benefit of counsel. However, I must dissent from the majority's conclusion that the assumed error in this case was harmless.

Assuming arguendo as the majority opinion does that the in-court identification was tainted by the patently illegal pre-trial lineup, this conviction cannot be saved by excluding the

tainted evidence and finding that there is sufficient evidence left in the case to sustain a conviction. The United States Supreme Court in *Chapman* v. *California* (1967), 386 U. S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, did apply the doctrine of harmless error to errors of constitutional dimension, but carefully limited that doctrine to avoid a complete gutting of the Bill of Rights. The Supreme Court in *Chapman, supra,* rejected the California Supreme Court's affirmance of the conviction on the grounds that the other evidence in the case was overwhelming, and adopted the approach taken in *Fahy* v. *Connecticut* (1963), 375 U. S. 85, 84 S. Ct. 229, 11 L. Ed. 2d 171, where it was said:

> "The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction?" 375 U. S. at 86-87.

And the Court in *Chapman* continued:

> "There is little, if any, difference between our statement in Fahy v. State of Connecticut about 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction' and requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. We, therefore, do no more than adhere to the meaning of our Fahy case when we hold, as we now do, that before a Federal Constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."

This test for harmless error bears little resemblance to the test utilized in the majority opinion, which, apparently, would exclude the illegal evidence and apply a straight forward sufficiency test to the remaining evidence. Such a test would vitiate the constitutional protections safeguarded by our exclusionary rules.

In this case, the majority would allow this conviction to stand on the uncorroborated testimony of an accomplice witness. Such a case, while admittedly sufficient as a matter of

law, is among the weakest and most suspicious cases known to our law. As one source points out:

"The facts that the testimony of accomplices is not of the most satisfactory character and that it is attended with serious infirmities are matters recognized by the decisions and are too obvious and well understood to call for extended exposition. Testimony of an accomplice has been held to be fraught with weakness due to the effect of fear, threats, hostility, motives, or hope of leniency. The consideration of the infirmities of this kind of testimony goes to the credibility of the evidence, and the law requires that such testimony be closely scrutinized and accepted with caution. From Crown political prosecutions, and before, to recent prison campt inquisitions, a long history of human frailty and governmental overreaching for conviction has justified distrust in accomplice testimony. It has been said that a skeptical approach to accomplice testimony is a mark of the fair administration of justice." 30 AM. JUR. 2d § 1149.

I believe that there is substantially more than a reasonable possibility that the identification contributed to this verdict. Therefore, I agree with Justice Prentice that the proper disposition of this case is a remand in order to determine whether or not the in-court identification was tainted by the pre-trial identification.

DISSENTING OPINION

PRENTICE, J.—I dissent and would remand for a determination of taint. If the in-court identification had a proper independent source and was clearly free of taint, the new trial motion should be overruled. *United States* v. *Wade* (1967), 388 U. S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149. Otherwise it should be granted, because we cannot say with any degree of certainty that the jury relied upon the accomplice's testimony rather than upon that of the other witness. *White* v. *State* (1971), 257 Ind. 64, 272 N. E. 2d 312. When the rights of the defendant have been clearly violated and there is reasonable grounds to believe that such violation may have prejudiced his cause, he has been placed in a position of grave peril

to which he should not have been subjected, and a conviction under such circumstances should be reversed. *White* v. *State, supra.*

NOTE.—Reported in 279 N. E. 2d 189.