JOHN GRIFFIN ALIAS ROBERT L. LEDBETTER *v.*

STATE OF INDIANA.

[No. 2-475A97. Filed December 21, 1976. Rehearing denied January 24, 1977. Transfer denied July 20, 1977.]

*Robert M. Clayton, II,* Hannibal, Missouri, *Samuel H. Power,* of Frankfort, for appellant.

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson,* Deputy Attorney General, for appellee.

## CASE SUMMARY

LOWDERMILK, J.—This case was transferred from the Second District to this office in order to lessen the disparity in caseloads among the Districts.

Defendant-appellant John Griffin, a/k/a Robert L. Ledbetter, appeals from his conviction in a bench trial of theft under $100.[1]

We affirm.

## FACTS

The evidence most favorable to the appellee State of Indiana reveals that during the morning of March 18, 1974, Ledbetter and two other men drove to the rural Grant County home of Willis Haines, 83, and his sister, Geneva Haines, 71.. At first Ledbetter and one of the others remained in their car while one man talked with Willis and Geneva inside their home.

Willis was told that he had paid $49 too much in income taxes. The man gave Willis a $100-bill and had Willis sign a blank check on the Marion National Bank.

Ledbetter and the other man then came into the house where Willis and Geneva were present. The man who had dealt with Willis gave the blank check to Ledbetter, who went outside, returned to get the car keys, and drove off.

Later, the Haines' telephone rang and was answered by one of the two men who had remained in the house. The two men then departed, walking toward Marion.

Meanwhile, Ledbetter had presented to a Marion National Bank teller a check on that bank signed by Willis but completed by another so that it was payable to the order of John Griffin in the amount of $2,150. The cashier directed Ledbetter to a bank officer. Ledbetter produced as identification a duplicate Nebraska driver's license bearing the name of John Griffin; he also gave Willis' phone number to the bank officer who called to get Willis' permission before cashing the check.

But due to the bank officer's prior conversations with Willis he knew that the person who gave him permission by phone

1. IC 1971, 35-17-5-3 and 35-17-5-12(1) (Burns Code Ed.).

was not in fact Willis. He left Ledbetter and told another bank employee, who had known Geneva for many years, to call the Haines residence and speak with Geneva. The bank employee asked Geneva if Willis had drawn a check for $2,150; Geneva replied that the check was supposed to be for only.. $51. The bank employee suggested that Geneva should go to the Marion Police Department.

Bank personnel then contacted the Marion Police Department. Detective Quentin Pettiford responded, identified himself to Ledbetter, and asked him some questions at the bank.

Ledbetter said the check was his. When confronted with the proper amount of the check he asked to see his attorney. Pettiford arrested him and had him taken to the detectives' office.

## ISSUES

1. Whether the trial court erred in admitting Geneva's in-court identification of Ledbetter.

2. Whether the blank check signed by Willis was a "written instrument" within the statutory definition of theft.[2]

3. Whether the Offenses Against Property Act[3] was unconstitutionally vague.

4. Whether there was sufficient evidence to support Ledbetter's conviction.

## DECISION

Issue One:

A statement of the facts relevant to the pre-trial identification procedures in the case at bar is necessary to illustrate our discussion of the first issue. Following the bank employee's suggestion, Geneva went immediately to the headquarters of the Marion Police Department where she was directed to the detectives' office; the evidence as to what then transpired is in conflict.

2. See IC 1971, 35-17-5-3 (1) (b).
3. IC 1971, 35-17-5-1 through 35-17-5-14 (Burns Code Ed.).

Pettiford testified that Ledbetter was sitting in the office while being questioned. Geneva, who Pettiford did not then know, entered the room and, without request, pointed out Ledbetter as the man who had been in her home. Pettiford then had Ledbetter stand beside an assistant police chief who was markedly taller than Ledbetter. Geneva picked out Ledbetter, whose attorney was not present.

Geneva's testimony was that after she had walked into the office Ledbetter and the taller man were brought into the room—at which point she picked out Ledbetter.

On the day before trial Geneva attended a meeting at the prosecutor's office where she was shown two pictures—both depicting Ledbetter, who she identified.

Ledbetter raises two challenges to Geneva's in-court identification of him:

(1) denial of his right to counsel in the confrontation in the detectives' office and

(2) unduly suggestive pre-trial identification procedures.

His first challenge is built upon the chronological sequence of the decisions which established and defined a defendant's right to counsel at pretrial confrontation with witnesses. In *U.S.* v. *Wade* (1967), 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and in *Gilbert* v. *State of California* (1967), 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, the United States Supreme Court held that a post-indictment, pre-trial lineup was a critical stage of criminal prosecution at which a defendant had a right to counsel. Our Supreme Court in *Martin* v. *State* (1972), 258 Ind. 83, 85, 279 N.E.2d 189, held that "a post-arrest lineup where the investigation has focused on the accused should be considered a critical stage of the prosecution." Within four months after *Martin* was decided, the United States Supreme Court in *Kirby* v. *Illinois* (1972), 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411, held a defendant did not have a right to counsel at a lineup conducted after

his arrest but before prosecution was commenced; the court noted that "a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him." 406 U.S. 688. In Indiana all prosecutions of crimes are instituted by information or indictment. IC 1971, 35-3.1-1-1(b) (Burns Code Ed.).

After the confrontation in the instant case had occurred our Supreme Court in *Winston* v. *State* (1975), 263 Ind. 8, 323 N.E.2d 228, overruled *Martin* and followed *Kirby*.

Ledbetter maintains that the *Martin* holding must control the case at bar; he argues that to retroactively apply the rule in *Winston* would be to deprive him of a right which he possessed at the time the confrontation occurred.

This contention is fallacious inasmuch as Ledbetter had no right to counsel at the confrontation under the *Martin* approach. In *Winston, supra,* a crime victim viewed the defendant through a window of the detectives' office following the defendant's arrest. The victim identified the defendant, whose attorney was not present. Justice Prentice, concurring only in the result, stated, at 323 N.E.2d 232:

> "I concur in the result reached by the majority. I would not however, retreat from our pronouncement in Martin v. State (1972), [258] Ind. [83], 279 N.E.2d 189, that a post-arrest lineup is a 'critical stage' requiring the presence of counsel under Article 1, Section 13 of the Constitution of Indiana. Recognizing Kirby v. Illinois (1972), 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 as disposing of this issue contrawise under the Sixth and Fourteenth Amendments of the Constitution of the United States, nevertheless, that determination is not dispositive of the same issue as viewed by this Court under our state constitution, inasmuch as our determination in no way violates the federal constitution but merely gives a more expansive right to counsel. The rule in *Martin* is clear and workable and need be no great burden to the state.
>
> "In the case at bar, *the identification by Miss Rogers occurred so close in point of time to the robbery that it did*

*not constitute a critical stage requiring the presence of an attorney.* As set out in Martin (supra) this Court has held

'[T]his Court has held that an on-the-scene confrontation between a witness and a suspect conducted within a reasonably short time after the commission of the crime for the purpose of determining whether the witness can identify the suspect is not within the scope of the Wade-Gilbert rule. . . .' Dillard v. State (1971), 257 Ind. 282, 274 N.E.2d 389.

I, therefore, would affirm the decision of the trial court upon the right to counsel issue upon this basis." (Our emphasis; citations omitted)

In any event, our Supreme Court in *Dewey* v. *State* (1976), 264 Ind. 403, 345 N.E.2d 842, 846, reviewed a pretrial confrontation which occurred on June 19, 1974, and stated:

"There is no right to counsel at a pre-indictment identification procedure. *Kirby* v. *Illinois* (1972), 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411; *Winston* v. *State* (1975), [263] Ind. [8], 323 N.E.2d 228."

Ledbetter had no right to have counsel present at the meeting in which the prosecutor allowed Geneva to identify Ledbetter from photographs. *U.S.* v. *Ash* (1973), 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619.

We turn now to Ledbetter's second challenge to Geneva's in-court identification of him—i.e., that it was based on unnecessarily suggestive pre-trial identification procedure.

In *Kirby, supra,* at 406 U.S. 691, the United States Supreme Court explained:

"The Due Process Clause of the Fifth and Fourteenth Amendments forbids a lineup that is unnecessarily suggestive and conducive to irreparable mistaken identification. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199; Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402. When a person has not been formally charged with a criminal offense, *Stovall* strikes the appropriate constitutional balance between the right of a suspect to be protected from prejudicial procedures and the interest of society in the prompt and purposeful investigation of an unsolved crime."

The court in *Stovall, supra,* at 388 U.S. 302, stated that "a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it. . . ." In *Dillard, supra,* at 257 Ind. 286-7, our Supreme Court elaborated:

> "We believe the *Stovall* test focuses attention on two different sets of facts: (1) The facts bearing on whether the confrontation was conducted in such a fashion as to lead the witness to make a mistaken identification. . . . (2) The facts bearing on how good a chance the witness had to observe the perpetrator of the crime such that any suggestiveness in the conduct of the confrontation could be resisted by the witness and he could make an accurate decision as to whether the man presented was the man who committed the crime. These would include the length of time the witness was in the presence of the perpetrator, the distance of the witness from him, the lighting conditions at the time, capacity for observation by the witness, opportunity to observe particular characteristics of the criminal, etc."

Nothing unduly suggestive occurred when Geneva barged into the detectives' office and spontaneously identified Ledbetter. Compare *Winston, supra.* The police did not request Geneva's presence; they did not know she was a witness when she entered the room. She did not know that a suspect would be in the room or that one had been arrested.

The "lineup" in which Ledbetter stood beside a noticeably taller man and the prosecutor's display of photos both showing Ledbetter may have been overly suggestive. See *Thurman* v. *State* (1970), 255 Ind. 102, 262 N.E.2d 635; *Simmons* v. *U.S.* (1968), 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247. However, the trial court correctly admitted Geneva's in-court identification of Ledbetter if it were reliable under the totality of the circumstances. *Sawyer* v. *State* (1973), 260 Ind. 597, 298 N.E.2d 440.

Ledbetter had been present in Geneva's home where she observed him from a distance of six to eight feet during daylight hours.

The trial court could therefore have properly considered her opportunity to see Ledbetter to be such that she could resist any suggestiveness in the pre-trial identification procedures and could make an accurate in-court identification of Ledbetter. See *Dillard, supra.*

We hold that the trial court did not err in admitting Geneva's in-court identification of Ledbetter.

Issue Two:

Ledbetter contends that the conduct alleged in the information did not constitute a violation of IC 1971, 35-17-5-3 so that the trial court erred in overruling his motion to dismiss the charge against him. The amended information alleged:

". . . John Griffin, a/k/a Robert L. Ledbetter late of said Grant County and State of Indiana . . . did then and there . . . knowingly obtain by deception the written signature of one Willis Haines to a written instrument to-wit: a blank check drawn on Marion National Bank of Marion, Marion, Indiana on the account of said Willis Haines and signed by said Willis Haines in blank; and said John Griffin, a/k/a Robert L. Ledbetter, did there upon insert the name of John Griffin as payee and did insert in said check the sum of two thousand one hundred and fifty dollars ($2,150.00) and did then present said check to said Marion National Bank for payment from the account of said Willis Haines; further that at the time of obtaining the signature of said check the said John Griffin, a/k/a Robert L. Ledbetter, did represent to said Willis Haines that said check would be made payable in the sum of fifty-one dollars; and said John Griffin, a/k/a Robert L. Ledbetter, did then and there intend to deprive the said Willis Haines of the use and benefit of the said two thousand one hundred and fifty dollars."

IC 1971, 35-17-5-3 provides:

"A person commits theft when he (1) knowingly:

\* \* \*

(b) obtains by deception . . . a signature to any written instrument . . . and

(2) . . .

(a) intends to deprive the owner of the use or benefit of the property . . ."

Through deception, Willis' signature on a blank, printed, personalized check was obtained.

Ledbetter first argues that this item was not a written instrument. Inasmuch as the Offenses Against Property Act does not define the term "written instrument" he looks to the Uniform Commercial Code[4] for a statement of its meaning. There can be no doubt that the item was "written." See IC 1971, 26-1-1-201(46). Ledbetter insists that it was not an "instrument."

IC 1971, 26-1-3-102 (1) (e) states:

"In this article . . . unless the context otherwise requires . . . '[i]nstrument' means a negotiable instrument."

Ledbetter correctly claims that the item was not negotiable at the time Willis signed it—for it then specified no "sum certain." See IC 1971, 26-1-3-104 (1) (b). However, he *incorrectly* concludes that it was not an instrument or a check because it was not negotiable.

We perceive the intent of the drafters of IC 1971, 26-1-3-102 (1) (e), *supra,* to be that the term "instrument" refers to a negotiable instrument simply for the sake of brevity; it is clear that an item does not necessarily have to be negotiable to be an "instrument" or a "check." See IC 1971, 26-1-3-104 (3). The Indiana Comment to IC 1971, 26-1-3-104 explains:

"The essential requirements to make an instrument negotiable are stated by subsection (1). The terms 'draft,' 'check,' 'certificate of deposit' and 'note' are classified and defined, *and may apply to both negotiable and non-negotiable instruments.* See subsections (2) and (3)." (Our emphasis)

An argument similar to Ledbetter's was rejected in *State v. Moreno* (1968), 156 Conn. 233, 240 A.2d 871, where the defendant was convicted of embezzlement after filling in blank check signed by her employer in order to obtain funds of her

---

4. IC 1971, 26-1-1-101 through 26-1-10-106 (Burns Code Ed.).

employer. She unsuccessfully asserted that she had not embezzled "because she never received checks, as such, from her employer but merely blank pieces of paper with a name signed thereon, which, according to Sec. 42a-3-104 "of the General Statutes (Rev. to 1962), were not checks or negotiable instruments since they did not contain an unconditional promise or order to pay a sum certain in money and were not payable to order or to bearer." 156 Conn. at 243.

In *Gillespie* v. *State* (1924), 194 Ind. 154, 157, 142 N.E. 220, our Supreme Court stated that under the prior statute defining the crime of obtaining by deception a signature to a written instrument:

> ". . . [T]he offense was complete when appellant obtained the signature of the prosecuting witness to the check, if it was obtained by false pretenses, with intent to defraud, as alleged, and if it was such an instrument as could be used to work an injury to the signer."

It is well settled that one who signs a blank check will be liable on it as it is completed. *Geddes* v. *Blackmore* (1892), 132 Ind. 551, 32 N.E. 567; *Snodgrass* v. *Sweetser* (1896), 15 Ind. App. 682, 44 N.E. 648. This rule survives under the UCC. IC 1971, 26-1-1-103. A holder in due course may enforce an incomplete check as completed. IC 1971, 26-1-3-407(3). But see IC 1971, 26-1-3-304 (1)(a) and (4)(d). Others who without negligence pay a check which was fraudulently and materially altered by the holder may enforce it against a negligent drawer. IC 1971, 26-1-3-406 and 26-1-3-407 (2)(a). The Indiana Comment to IC 1971, 26-1-3-406 states:

> "The Code now treats the signing of an incomplete instrument as conclusive evidence of negligence under Sec. 3-407."

See also IC 1971, 26-1-3-115 and 26-1-3-401(1).

It is obvious that the blank check which Willis signed was an instrument which could have been used to his injury. Therefore the check was within the purview of the theft statute. *Gillespie, supra;* IC 1971, 35-17-5-2.

Ledbetter also argues that the commercial instrument which Willis signed in blank was not "property"— so that Ledbetter did not have the intent required by IC 1971, 35-17-5-3(2)(a), *supra*. But see IC 1971, 35-17-5-13(15).

He raises this issue for the first time in his brief after failing to specify it in his motion to correct errors; the issue was therefore waived. Ind. Rules of Procedure, Trial Rule 59(G); *Spivey* v. *State* (1971), 257 Ind. 257, 244 N.E.2d 227.

We therefore find no error in the trial court's denials of Ledbetter's motions to dismiss.

Issues Three and Four:

We shall consolidate our discussion of the final two issues inasmuch as Ledbetter's premise as to both is that there was no proof of value of the blank check signed by Willis.

Ledbetter first maintains that IC 1971, 35-17-5-3, *supra*, was unconstitutionally vague and that the trial court therefore erred in not granting his motion to dismiss the charge. A statute violates the due process of law guaranty of the Fourteenth Amendment to the United States Constitution if it forbids conduct in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. *Grody et al.* v. *State* (1972), 257 Ind. 651, 278 N.E.2d 280.

Ledbetter argues that persons of common intelligence could not ascertain an intent on his part to deprive Willis of any value of the blank commercial instrument and that his punishment could not be determined by persons of common intelligence in the absence of some evidence of value. See IC 1971, 35-17-5-12.

He also contends that his conviction was based upon sufficient evidence without some proof of value.

However, his contentions fail inasmuch as they are based on a faulty premise. There was proof of value. The evidence was that Ledbetter presented the check to the drawee bank and attempted to convert it into $2,150 in large bills to be paid from Willis' account.

Thus persons of common intelligence could readily ascertain the meaning of IC 1971, 35-17-5-3, *supra,* and apply it to Ledbetter's conduct; they could also fathom his penalty under IC 1971, 35-17-5-12. We therefore hold that the trial court did not err in overruling Ledbetter's motion to dismiss.

And we conclude that the evidence was sufficient to sustain the conviction. *Hancock* v. *State* (1971), 256 Ind. 337, 268 N.E.2d 743.

Judgment affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 357 N.E.2d 917.