Robert BRAY, Appellant (Defendant below),

v.

STATE of Indiana, Appellee (Plaintiff below).

No. 582S205.

Supreme Court of Indiana.

Dec. 29, 1982.

John L. Kelly, Jr., Gary, for appellant.

Linley E. Pearson, Atty. Gen., Cynthia Sue Stanley, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Robert Bray, was convicted by a jury of burglary and attempted burglary, Class B felonies. Ind.Code § 35–43–2–1 (Burns 1979 Repl.); Ind.Code § 35–41–5–1 (Burns 1979 Repl.). In a bifurcated proceeding, the jury also found that defendant was an habitual offender. He was sentenced to concurrent terms of fourteen years for the burglary and attempted burglary convictions. Those sentences were enhanced an additional thirty years by virtue of his status as an habitual offender. In this direct appeal, he presents the following issues for our review:

1. Whether the trial court erred in overruling defendant's motion to suppress and objections to evidence regarding a pretrial lineup and identification therefrom;

2. Whether the evidence was sufficient to support his conviction for attempted burglary; and

3. Whether the court erred during the habitual offender proceedings by admitting prison records of defendant.

The record reveals that at approximately 11:30 p.m. on September 4, 1980, the residence of Rollie Crawford in Gary, Indiana, was burglarized. When Crawford returned from work at 11:45 that evening, he discovered the door of his home had been pried open and that his stereo system, a disco light, and $300 in United States currency were missing. A neighbor had witnessed suspicious activities outside the home, including the repeated passings of a yellow automobile in the street outside the home; on her way to the neighborhood grocery store, she had encountered a man on the sidewalk outside the home. On her return from the store, she again observed the man as he ran from Crawford's front door to some bushes alongside the street. The man was wearing a short dark coat and was carrying a long black object which resembled a crowbar.

Approximately an hour later, residents adjacent to the Alden Austin home in Gary were also alerted to suspicious activities about that home. Both Marilyn Walker, who lived next door to Austin, and Sandra Boulware, who resided across the street, heard knocking on Austin's door. Both watched as three men left and then returned to the unanswered front door, where they began prying the door from its frame. Boulware called the police, who arrived shortly thereafter. Once the squad car entered the neighborhood, the three men returned to their yellow automobile parked on the street. After one or two minutes, Boulware observed the yellow automobile slowly leaving the neighborhood. She again telephoned police, describing the automobile and its nexus to the suspicious activities. The information was dispatched to patrol cars. Police officers followed the yellow automobile and immediately stopped it and arrested its occupants, amongst which was defendant.

The subsequent police investigation culminated in defendant's conviction for the burglary of the Crawford residence, as well as the attempted burglary of the Austin home. Here, he does not challenge the validity of his conviction for burglary. He expressly concedes in his brief that the evidence, which included an in-court identification by Crawford's neighbor, was sufficient to support that conviction. His contentions are directed toward the validity of his con-

viction for attempted burglary and the conclusion that he qualified for sentencing as an habitual offender.

## I.

At approximately 2:00 p.m. on September 5, Gary police officers conducted a lineup wherein both Boulware and Walker identified defendant as one of the men who had attempted to burglarize the Austin residence. Defendant filed a pretrial motion to suppress evidence regarding the lineup and identifications therefrom. Following a hearing on the motion, it was denied by the trial court. Defendant maintains the trial court erred in finding the evidence admissible. His argument is predicated on two bases.

He first asserts the lineup was improper because it was conducted without the presence of his attorney, thereby violating his right to counsel. It is true, as defendant asserts, that a written waiver of the right to have counsel present at the lineup was not obtained.

The question before us, however, turns on whether the Sixth Amendment right to counsel had attached at the time the lineup occurred. The issue was recently addressed by this Court in *Hatcher v. State*, (1981) Ind., 414 N.E.2d 561, where we stated:

"The Sixth Amendment right to counsel attached at or after the time that adversary judicial proceedings had been initiated against the accused. *Kirby v. Illinois*, (1972) 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411, 417 (plurality opinion). In *United States v. Wade*, (1967) 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and *Kirby v. Illinois, supra,* the United States Supreme Court held that the right to counsel encompasses the right to have an attorney present at a pre-trial 'lineup' identification procedure conducted at or after the initiation of such criminal proceedings. In this State, the filing of an information or indictment begins the formal criminal process. *Winston v. State*, (1975) 263 Ind. 8, 11, 323 N.E.2d 228, 230. Therefore an accused is entitled to have counsel present at any 'lineup' which is conducted subsequent to the filing of an information or indictment. *Kirby v. Illinois, supra; United States v. Wade, supra; Winston v. State, supra.*" *Id.,* 414 N.E.2d at 563.

Defendant concedes that at the time the lineup was conducted, he had not been charged with any criminal offense *related* to the burglary of the Crawford home or the attempted burglary of the Austin residence. He points out, however, that at the time of the lineup, he had been formally charged with a criminal offense, albeit unrelated in time, place, or circumstance to the burglary or attempted burglary at issue. The record reveals that at the time defendant was charged with the burglary and attempted burglary, he was free on bond in the unrelated charge. Relying on case precedent that the right to counsel attaches with a formal charge of "any" criminal offense, he argues that he was entitled to counsel at the lineup by virtue of the fact that charges had been filed against him concerning the unrelated incident.

It is true that in both *Kirby v. Illinois,* (1972) 406 U.S. 682, 684, 92 S.Ct. 1877, 1879, 32 L.Ed.2d 411, 414, and *Winston v. State,* (1975) 263 Ind. 8, 12, 323 N.E.2d 228, 230, the phrase "formally charged with *any* criminal offense" (emphasis added) was employed to describe the determinant at which the right to counsel attaches. The literal intendment defendant asks us to attribute to the term "any," however, lacks a logical or factual foundation.

The philosophical premise upon which it has been held that the right to counsel attaches with the filing of an indictment or information is that via the formal charge, the adversarial process is initiated. In turn, it has been recognized that once a charge has been filed, the presence of counsel is necessary at any critical stage in the proceedings in order to preserve defendant's right to a fair trial. *Kirby v. Illinois, supra* (plurality opinion); *Powell v. Alabama,* (1932) 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158; *Bruce v. State,* (1978) 268 Ind. 180, 375 N.E.2d 1042; *Winston v. State, supra.* This Court has held that a lineup conducted prior

to the filing of an information or indictment is not a critical stage which necessitates the presence of counsel in order to preserve defendant's right to a fair trial. *Carman v. State,* (1979) Ind., 396 N.E.2d 344. That conclusion is not somehow altered by virtue of the fact that a criminal charge has been filed against a defendant in a wholly unrelated matter; that circumstance does not affect the ability of defendant and counsel to prepare a defense to any charge which is filed concerning the incident which prompted the lineup. Pursuant to *Hatcher v. State, supra,* and *Carman v. State, supra,* defendant was not entitled to the presence of counsel by virtue of the charge filed and pending in the unrelated cause. *Cf., Landrum v. State,* (1981) Ind., 428 N.E.2d 1228 ("arrest" for purposes of Ind.R.Crim.P. 4(A) or (C) is not established by virtue of incarceration in another county on unrelated charge). There was no error here.

Defendant also asserts that evidence of the pretrial lineup and identification therefrom was improper because the lineup was conducted in an impermissibly suggestive manner. He asserts that prior to the lineup, witness Boulware was informed that a suspect was present in the lineup. That practice has been unequivocally condemned by this Court. *Sawyer v. State,* (1973) 260 Ind. 597, 298 N.E.2d 440.

■ The evidence introduced at the suppression hearing does not support defendant's factual assertion, however. While Boulware testified on direct examination that immediately prior to the lineup, police had told her she "would have to identify him in a lineup . . .," she also denied that police officers had indicated that suspects were present in the lineup. Likewise, Police Officer Boris Velovski denied telling the witnesses "that within the lineup were the individuals that had been arrested in the area of the break-in." As an appellate tribunal, this Court cannot reweigh the evidence concerning a factual matter at issue on a motion to suppress. *Lane v. State,* (1977) 266 Ind. 485, 364 N.E.2d 756. Defendant's factual assertion consequently is without merit. *Id.*

Defendant's contention that the lineup was conducted in an unnecessarily suggestive manner is also predicated on the alleged disparity in height and weight amongst the subjects contained in the lineup. A photograph of the lineup contained in the record reveals that defendant, who weighs approximately 158 pounds and is 5'6" tall, was the shortest subject in the lineup. Other participants' weight and height ranged from a subject who was 5'9" tall and weighed 150 pounds to one whose height was 6'2" and weight was 180 pounds. The photograph reveals that defendant was positioned next to the tallest subject in the lineup. Defendant asserts that by virtue of his status as the shortest subject, his position alongside a noticeably taller subject violated *Griffin v. State,* (1976) 171 Ind. App. 543, 357 N.E.2d 917.

■ *Griffin,* however, involved a two-person lineup consisting of defendant Griffin and the "markedly taller" assistant police chief. *Id.,* 171 Ind.App. at 547, 357 N.E.2d at 920. In short, the manner in which defendant was viewed in *Griffin* in effect reduced the matter to an unnecessary and impermissibly suggestive one-on-one confrontation. *See, Holt v. State,* (1979) Ind., 396 N.E.2d 887; *Carmon v. State,* (1976) 265 Ind. 1, 349 N.E.2d 167. Here, although defendant was the shortest subject in the lineup, the totality of the physical characteristics of the subjects does not lead to the conclusion that the relative height of the subjects alone rendered the lineup impermissibly suggestive. *Stovall v. Denno,* (1968) 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199; *Hill v. State,* (1977) 267 Ind. 411, 370 N.E.2d 889. The various subjects present in the lineup each wore medium length hair and had similar complexions. With one exception, all of the subjects, including defendant, wore facial hair. All of the subjects were of slender build. In light of these similarities, the discrepancy in height, which was not extreme in nature, did not render the lineup unduly suggestive. *Allen v. State,* (1981) Ind., 428 N.E.2d 1237; *Hill v. State, supra.*

■ Defendant also maintains that the lineup was improperly conducted because each of the subjects was required to don a short, dark jacket owned by defendant. Immediately after the burglary and attempted burglary, witnesses had indicated to police that the perpetrator had been clothed in a dark jacket. We note that this Court recently held that it was not improper to require a defendant to don a coat which had been worn by the perpetrator; we concluded that the act was not testimonial in nature and did not violate defendant's privilege against self-incrimination. *Bivins v. State,* (1982) Ind., 433 N.E.2d 387; *see generally, Allen v. State, supra.* Defendant maintains however, that the act of donning the jacket was impermissibly suggestive by virtue of the physical makeup of the subjects in the lineup.

Again, he harkens to the fact that he was the shortest person in the lineup. He asserts that he is the only person in the lineup whom the jacket would fit. The record reveals, however, that witness Walker identified the defendant before he had tried on the jacket. Furthermore, the record does not reveal that defendant was the only subject whom the jacket would fit; the similar builds of the subjects portrayed in the lineup photograph militates against defendant's factual assertion.

In light of the totality of the circumstances present here, including the fact that the witnesses were not informed that a suspect was present in the lineup, we conclude the identifications therefrom were not the product of impermissibly suggestive procedures. Accordingly, the trial court did not err in admitting evidence regarding the lineup and the identifications therefrom. *Allen v. State, supra; Hill v. State, supra.*

## II.

■ Defendant maintains the evidence is insufficient to support his conviction for the attempted burglary of the Austin residence. He concedes, on the other hand, that the evidence is sufficient to support his conviction for burglary of the Crawford residence. When this Court is confronted with a challenge to the sufficiency of the evidence, whether circumstantial or direct, it is not our prerogative to weigh the evidence or judge the credibility of witnesses. Rather, we must examine the evidence most favorable to the fact finder's conclusion, together with the reasonable inferences which can be drawn therefrom. If, from that viewpoint, there is substantial evidence of probative value to support the fact finder's conclusion that defendant was guilty beyond a reasonable doubt, it will not be disturbed. *Easley v. State,* (1981) Ind., 427 N.E.2d 435; *Spears v. State,* (1980) Ind., 401 N.E.2d 331. The standard prevails even though circumstantial evidence may give rise to conflicting yet reasonable inferences of guilt and innocence. *Easley v. State, supra.*

■ Defendant concedes that the evidence does establish that he broke and entered the Austin home. Both Boulware and Walker identified defendant as the man who pried open Austin's door. Walker, whose premises shared a common wall, heard footsteps run upstairs in the Austin residence; likewise, she noticed that Austin's door was slightly ajar after the intruder left. Witness Kenneth Price, who had accompanied defendant that evening and remained in the automobile outside the Austin residence, also testified that defendant did pry the door open and enter the premises. Conceding this proof of a breaking and entering, he asserts that there is no evidence that contemporaneous with his entry, he had the intent to commit a felony therein, as is required to establish the offense of burglary. Ind.Code § 35–43–2–1, *supra.* His factual contention is predicated on the fact that nothing was taken from the Austin home, as well as accomplice Price's testimony that once defendant returned to the automobile following the breaking and entering, defendant stated that "he felt he shouldn't go into the house." Price also testified, however, that earlier in the day, defendant had asked Price to drive him around so that he could commit some burglaries. The Austin residence was selected by defendant because a newspaper was lying at its entrance.

We note that defendant's contention is directed to his conviction for *attempted* burglary. Consequently, the record need only establish that defendant, while acting with the required culpability, engaged in conduct which constituted a substantial step toward commission of the burglary. Ind. Code § 35–41–5–1, *supra;* *Williams v. State,* (1982) Ind., 433 N.E.2d 769; *Zickefoose v. State,* (1979) 270 Ind. 618, 388 N.E.2d 507.

Based on the fact that defendant's express purpose was to burglarize homes, that defendant had already burglarized the Crawford home, and that the Austin home was selected because of indications that its occupants were away, it can be concluded that at the time defendant broke and entered the home—a substantial step toward the commission of burglary—he was acting with the intent to commit a felony therein: theft. The evidence was sufficient to support his conviction for attempted burglary. *Williams v. State,* (1973) 261 Ind. 385, 304 N.E.2d 311; *Strosnider v. State,* (1981) Ind. App., 422 N.E.2d 1325; *Keirns v. State,* (1980) Ind.App., 403 N.E.2d 361.

### III.

■ During the habitual offender phase of the proceedings, the state sought to introduce certified records from the Indiana Department of Correction to prove defendant had accumulated two prior unrelated felonies, as required by Ind.Code § 35–50–2–8, *supra.* *See generally, Miller v. State,* (1981) Ind., 417 N.E.2d 339. Over defendant's objection that the state had not produced any witnesses to testify regarding the certification on the documents, the records were admitted. The defendant here renews his contention; he argues that he was denied his right of confrontation by the court's ruling.

The authenticity and accuracy of the records were attested to and certified by Ed Jones, the "keeper of the records" at the Indiana State Prison, and Robert E. Hardin, the "keeper of the records" at the Reception-Diagnostic Center. There was no objection or dispute as to the validity of the certifications. Consequently, as per Ind.R. Tr.P. 44, the records were admissible by virtue of the keepers' certifications. *Underhill v. State,* (1981) Ind., 428 N.E.2d 759; *Gilmore v. State,* (1981) Ind., 415 N.E.2d 70. Defendant's right of confrontation was not denied him. *Barnett v. State,* (1981) Ind., 429 N.E.2d 625.

■ Defendant also asserts that the certified documents are insufficient to establish his status as an habitual offender; he maintains there is no evidence to indicate that he is the same "Robert Bray" who was convicted of the prior felonies. Included in the certified documents regarding the prior felonies are the mug shots relative thereto, including both frontal and side views; also documented are the physical characteristics such as height, weight, hair color, eye color, and complexion.

Based on this photographic and documentary evidence, the jury's conclusion that defendant was the same "Robert Bray" who had accumulated the two prior felony convictions must be sustained. *Barnett v. State, supra; Dorton v. State,* (1981) Ind., 419 N.E.2d 1289; *Gilmore v. State, supra.* There was no error here.

For all the foregoing reasons, there was no trial court error and its judgment should be affirmed.

Judgment affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK and PRENTICE, JJ., concur.