**Donald P. FINE, Appellant**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

No. 984S361.

Supreme Court of Indiana.

March 26, 1986.

Nile Stanton, Nile Stanton & Associates, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Theodore E. Hansen, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Donald P. Fine appeals his conviction for murder, Ind.Code § 35–42–1–1 (1985 Burns Repl.). Following a trial by jury, the judge sentenced Fine to a term of forty-five years imprisonment.

Appellant raises the following three issues in this direct appeal:

1) Whether the trial court erred in admitting State's Exhibit 21, a photograph of the victim at the crime scene;

2) Whether the trial court erred in failing to order *sua sponte* a hearing on the competency of the defendant to stand trial, and

3) Whether Fine was denied effective assistance of counsel.

These are the facts which support the judgment of the trial court. On August 17, 1982, appellant arrived at the home of Linda Fine, his estranged wife. Also present were Brett Fine, their son; Bryan White, Linda's son by a previous marriage; Chris Webb, a friend of Bryan's; and Linda's boyfriend. The latter left shortly after appellant's arrival. After a brief discussion, Donald, Brett and Bryan went to a local store, where Donald purchased some groceries. Leaving the boys at the store to play a video game, Donald returned to the house.

Donald and Linda discussed the support provisions of their pending divorce. When Donald suggested that such discussion might best be continued in private, Chris went to the front porch and sat in a chair near the door. From this position, Chris heard the sound of voices, but did not hear the substance of the discussion.

Chris then heard two shots. He jumped up from the chair and looked in the front door, where he saw Linda on her hands and knees reaching for the doorhandle. He heard Linda say "No, Pat, no," and saw Donald knock her arm away from the door. While running across the street, Chris heard several more shots and saw Donald leave the house. A neighbor, Carol Angelmyer, also heard shots and observed Donald leaving the house. After phoning police, she and Chris, who had joined her, returned to the house to find Linda lying in the hallway, partially propped up by the wall. When police and paramedics arrived, they moved the body slightly to check for vital signs. There were none. An autopsy revealed that Linda had been shot twice in the chest and three times in the back.

Meanwhile, Donald drove to the Mishawaka Police Department, where he told officers that he had just shot his wife and asked that help be dispatched to the house.

## I. ADMISSIBILITY OF PHOTOGRAPH

Fine alleges error in the trial court's admission of State's Exhibit 21, a color photograph of the victim lying prone in the hallway. Although the position of the body was altered slightly, its location within the crime scene was not substantially changed. Appellant argues that the photograph is not relevant and that any probative value is outweighed by its prejudicial nature.

It is well established that the admission of such evidence is within the discretion of the trial court. *Patterson v. State* (1975), 263 Ind. 55, 61, 324 N.E.2d 482, 486; *Webster v. State* (1981), Ind., 426 N.E.2d 1295, 1297; *Dresser v. State* (1983), Ind., 454 N.E.2d 406, 408. To be admissible, evidence must first be relevant to an issue material to the case. The probative value of the evidence must then be weighed against its potential to inflame the jury. This balancing test is best performed by the trial court; its decision will not be overturned absent a showing of clear error. *Dresser*, 454 N.E.2d at 409.

Photographs are relevant if they depict objects or scenes a witness would be permitted to describe through testimony. *Id.* Clearly, testimony regarding the crime scene was permissible, and several witnesses testified without objection to the appearance of the body. Appellant, however, alleges that any relevance was destroyed because the position of the body in the photo is altered slightly from the position of the body as originally found. Fine argues that this change affects the accuracy of what the photo purports to represent. However, the photograph did not purport to represent the unchanged crime scene. It purported to represent the location and position of the body following attempts at resuscitation. This was made clear to the jury through the testimony of several witnesses. Photographs have been held admissible even though they depict a body moved from its original position or location. *Dresser*, 454 N.E.2d at 408; *Webster*, 426 N.E.2d at 1298; *Patterson*, 324 N.E.2d at 486.

Appellant also argues that the photograph is not relevant to any issue material to the case because the cause of death and the location of the body were unchal-

lenged. On the contrary, appellant's version of the incident varied considerably from the version presented by the State. At issue was the location where the final shots were fired and the possibility that those shots were fired accidentally or in self-defense. As evidence bearing on these issues, the State introduced evidence of the bullet pattern and trajectory and the pattern of blood on appellant's clothing. Equally probative of these issues were the location of the body and the quantity of blood shed as a result of the wounds as illustrated by the photograph. Therefore, the trial court was correct in concluding that the photograph was relevant to an issue material to the case.

■ Finally, appellant argues that the probative value of the photograph was outweighed by its tendency to inflame the jury. In assessing whether the trial court exercised sound discretion in making this balance, we note that the trial judge carefully considered all the photographs offered by the State and excluded many of them. Moreover, the record reveals that the photograph was not duplicative. Relevant autopsy photographs were admitted, but the jury viewed no other photographs of the body at the scene. Though the photograph is gruesome and displays a scene of violence and bloodshed, it is a representation of the unfortunate reality of this case. The jury should not be foreclosed from considering this reality. We conclude that the trial court properly admitted State's Exhibit 21.

## II. COMPETENCY HEARING

■ Appellant alleges that the trial court's failure to order a hearing on his competency to stand trial constitutes reversible error. Though Fine never requested such a hearing, competency may be raised at any time by the court *sua sponte* or by any other person. *Dragon v. State* (1979), 270 Ind. 223, 224, 383 N.E.2d 1046, 1047. The trial court is required by statute to have a competency hearing if "at any time, the judge has reasonable grounds for believing the defendant lacks the ability to

understand the proceedings and assist in his own defense." Ind.Code § 35–36–3–1 (1985 Burns Repl.).

However, the right to a hearing is not absolute. *Goodman v. State* (1983), Ind., 453 N.E.2d 984, 985. A hearing is required by statute and due process only when there is evidence before the court that creates a reasonable doubt as to the defendant's competency. *Pate v. Robinson* (1966), 383 U.S. 375, 385, 86 S.Ct. 836, 842, 15 L.Ed.2d 815; *Perry v. State* (1984), Ind., 471 N.E.2d 270, 273. Evidence sufficient to require a hearing must be determined on the facts of each case, and the decision lies within the province of the trial judge. Absent an abuse of discretion, the trial court's decision will not be disturbed. *Perry,* 471 N.E.2d at 273.

■ As evidence casting doubt on the defendant's competence, counsel points to several statements made by Fine during proceedings to determine the acceptability of a guilty plea. When asked to give a factual basis for the plea, Fine refused to admit the essential element of intent. An *Alford* plea was discussed and rejected. *North Carolina v. Alford* (1970), 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162. The trial court refused Fine's guilty plea, noting doubts about Fine's "understanding of the proceedings."

In context, Fine's statements during the guilty plea proceedings evidence no more than appellant's momentary confusion in reconciling his desire to enter into a favorable plea agreement with his desire to maintain his innocence of an essential element of the crime. Fine's confusion is the understandable result of his attempt to grapple with a complex legal problem. The judge's expression of doubt about Fine's "understanding of the proceedings" clearly refers to the guilty plea proceedings, and not the proceedings against Fine as a whole.

Moreover, Fine testified coherently in his own behalf at trial, and there is no suggestion of incompetence at any time prior to or following the guilty plea proceedings.

During a hearing on the Motion to Correct Errors, both of Fine's trial attorneys testified that they never had cause to question Fine's competence during their representation. Under these circumstances, the trial court was well within its discretion in not ordering a hearing on Fine's competence.

### III. EFFECTIVE ASSISTANCE OF COUNSEL

Fine claims that his trial counsel did not represent him effectively. Our standard of review for such claims derives from *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Price v. State* (1985), Ind., 482 N.E.2d 719. First, appellant must overcome a presumption of competence to show that his attorney's performance was defective, and, second, he must demonstrate that the defense was prejudiced by the deficient performance. *Id.*

In support of his claim of ineffective assistance of counsel, appellant attacks trial counsel's theory of defense as "irrational and incomprehensible." Trial counsel described the case as an "accidental occurrence which arose from the sudden heat of provocation," and tendered instructions on accident, self-defense, and voluntary manslaughter. These theories of defense, albeit somewhat internally inconsistent, were based directly on the appellant's version of the incident. At the hearing on the Motion to Correct Errors, trial counsel testified that he presented these theories in an effort to expose the jury to all the law involved in the case. Counsel's decision to pursue a strategy of multiple defenses was a tactical one. Deliberate tactical decisions do not establish ineffective assistance of counsel. *Elliott v. State* (1984), Ind., 465 N.E.2d 707, 710.

Appellant further points to trial counsel's failure to cross examine "key state's witnesses," failure to object to certain photographs, failure to object to the testimony of Chris Webb, failure to utilize depositions, and numerous other alleged failures. However, appellant fails to explain how he was prejudiced by these charged defects. He has shown no favorable testimony which could have been elicited on cross examination. The photograph which he claims as objectionable was carefully considered by the court in the balancing process discussed in Issue I. It is not apparent that an objection to Webb's testimony would have been sustained, and the record does not include the depositions to which appellant refers.

Trial counsel did vigorously cross examine numerous witnesses and successfully objected to several exhibits offered by the State. He presented testimony in appellant's favor at the sentencing hearing. Under these circumstances, appellant received reasonably effective assistance of counsel.

The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.