**Ronald Leon TIMMONS, Appellant,**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee.**
**(Plaintiff Below).**

No. 984S372.

Supreme Court of Indiana.

Dec. 12, 1986.

David C. Kolbe, Milo W. Lightfoot, Warsaw, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Appellant Ronald Leon Timmons was convicted of burglary, a class C felony, Ind.Code § 35-43-2-1 (Burns 1979 Repl.); theft, a class D felony, Ind.Code § 35-43-4-2 (Burns 1979 Repl.); and attempted burglary, a class C felony, Inc.Code § 35-41-5-1 (Burns 1979 Repl.), Ind.Code § 35-43-2-1 (Burns 1979 Repl.) and was found to be an habitual offender. Ind.Code § 35-50-2-8 (Burns 1979 Repl.). The trial court imposed concurrent terms of imprisonment of five years each for the burglary and attempted burglary, two years for the theft, and enhanced each of these sen-

tences by thirty years based upon the habitual offender determination.

The principal issues raised in this direct appeal are:

(1) Whether prosecutorial misconduct deprived appellant of a fair trial and constituted reversible error;

(2) Whether the evidence is sufficient to establish the element of intent to commit a felony for the attempted burglary conviction, and,

(3) Whether the habitual offender determination is supported by sufficient evidence.

On December 9, 1983, at 1 a.m., Pearl Andrew Heady was awakened by a pounding on the door of his bait shop which neighbors his residence. When he investigated the noise, he saw two figures flee from the store. One of the investigating police officers, Larry Engle, observed fresh pry marks on the door to the bait shop, which was slightly ajar.

The police tracked two sets of footprints through fresh snow from the store to a bridge where they apprehended appellant and a co-defendant. Officer Engle identified appellant in court as one of the men apprehended. In Engle's opinion, the footprints the police tracked matched the tread of the shoes worn by the two men.

The police also followed the tracks to Mr. J's Floral Shop. The right hand door of the main entrance was unlocked and there was a little snow on the doormat just inside. The back door had pry marks similar to those found at the bait shop. The police followed the tracks further and found a white bank bag containing numerous personal checks with the floral shop as payee. The manager of the floral shop had determined that a white money bag containing $116 in cash was missing.

## I. Prosecutorial Misconduct

Appellant argues that prosecutorial misconduct deprived him of a fair trial. During voir dire, defense counsel discussed the presumption of innocence with prospective jurors. The prosecutor asked the jurors if they understood that the presumption of innocence "is merely procedural and does not mean the Defendant is innocent." Timmons maintains that these statements relieved the State of the burden to prove defendant guilty beyond a reasonable doubt and violated his right to an impartial jury.

■ To determine whether the prosecutorial misconduct deprived a defendant of a fair trial, this Court conducts the dual analysis enunciated in *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843. We first determine whether the prosecutor engaged in misconduct by referring to case law and the Code of Professional Responsibility. If misconduct has been established, then we must determine whether the misconduct, under the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected. The gravity of the peril is determined by considering the probable persuasive effect of the misconduct on the jury's decision, not the degree of the impropriety of the conduct. Under this standard, we find that appellant has established that prosecutorial misconduct occurred during the trial.

The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment. The presumption of innocence is a basic component of a fair trial under our system of criminal justice. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). As Justice Edward Douglas White once wrote:

> The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law.

*Coffin v. United States*, 156 U.S. 432, 453, 15 S.Ct. 394, 403, 39 L.Ed. 481, 491 (1895).

In the administration of criminal justice, courts must guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt. *Estelle*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126. A criminal trial com-

mences with the presumption of innocence. *King v. State* (1957), 236 Ind. 268, 139 N.E.2d 547. The presumption of innocence continues to operate until overcome by proof of guilt beyond a reasonable doubt. *United States v. Fleischman,* 339 U.S. 349, 70 S.Ct. 739, 94 L.Ed. 906 (1950). The prosecutor has the burden to produce evidence of guilt to avoid a directed verdict and the burden to persuade the fact finder that the defendant is guilty beyond a reasonable doubt in order to secure a conviction. The jury should be instructed on the presumption of innocence and the prosecutor's burden to prove defendant guilty beyond a reasonable doubt because:

> [w]hile the legal scholar may understand that the presumption of innocence and the prosecution's burden of proof are logically similar, the ordinary citizen ... may draw significant additional guidance from an instruction of the presumption of innocence ... 'The term [presumption of innocence] does convey a special hint in that it cautions the jury to put away from their minds all the suspicion that arises from the arrest, the indictment, and the arraignment, and to reach their conclusion solely from the legal evidence adduced.' *Wigmore* 407.

*Taylor v. Kentucky,* 436 U.S. 478, 484–85, 98 S.Ct. 1930, 1934, 56 L.Ed.2d 468, 474–75 (1978).

Even the standard of proof "beyond a reasonable doubt" is regarded as a mechanism necessary "to ensure against unjust convictions by giving substance to the presumption of innocence." *Lego v. Twomey,* 404 U.S. 477, 487, 92 S.Ct. 619, 625, 30 L.Ed.2d 618, 626 (1972). Moreover, the presumption of innocence is more accurately an "assumption" to be followed in the absence of contrary evidence. This assumption indicates that "the opponent of a claim or charge is presumed not to be guilty [which] is to say in another form that the proponent of the claim or charge must evidence it." *Taylor,* 436 U.S. at 483, 98 S.Ct. at 1934, 56 L.Ed.2d at 474 n. 12 (quoting *Wigmore* 407).

■ The prosecutor's comments minimized and mischaracterized the presumption of innocence and thus constituted misconduct.

While the prosecutor's characterization of the presumption of innocence belittled the central nature of one of the most important features of American criminal law, we must also examine its probable effect on the jury's decision. *Maldonado,* 265 Ind. 492, 355 N.E.2d 843. The comment was a solitary reference, rather than a persistent theme, and the trial court charged the jury twice with more expansive notions of the presumption of innocence. These instructions told the jury:

(1) The filing of the information, defendant's arrest, and the institution of trial proceedings should not be considered as evidence of guilt because these are formal events necessary to bring defendant to trial.

(2) Defendant is presumed innocent of the commission of any crime, a presumption which continues throughout the trial and is not overcome until the State has proven to each juror beyond a reasonable doubt each and every element of the crime charged. Under this presumption, the defendant is not required to prove his innocence or to provide any explanations.

While the prosecutor's remark was unduly disparaging of one of the basic protections imbedded deep in the roots of our criminal law, it cannot really be said that it deprived the defendant of a fair trial.

## II. Sufficiency of Evidence—Attempted Burglary

Appellant argues the evidence was not sufficient to sustain his conviction for attempted burglary because the State did not establish that he intended to commit a felony when he entered the bait shop.

■ To sustain a conviction for attempted burglary, the State must establish more than breaking and entering. A burglary conviction requires proof of "intent to commit a felony therein" and this element may not be inferred from proof of the

breaking and entering alone. *Aikins v. State* (1983), Ind., 443 N.E.2d 820. The State must prove that when defendant broke and entered the premises he had the intention to commit a specific felony inside the building or structure. *Easton v. State* (1967), 248 Ind. 338, 228 N.E.2d 6. However, the intent to commit a felony may be inferred from the circumstances. *Kondrup v. State* (1968), 250 Ind. 320, 235 N.E.2d 703.

This Court has previously indicated that evidence of a burglary predicated on theft which was committed during the course of a criminal episode that included an attempted burglary may be sufficient evidence to infer the specific intent requisite for the attempted burglary conviction. *Green v. State* (1984), Ind., 461 N.E.2d 108. In *Green,* the defendant was convicted for burglary of the Bunch house and attempted burglary of the Rochman house. The evidence indicated that appellant was apprehended in the vicinity of the houses and possessed items stolen from the burglarized house. Near the house of the attempted burglary, the police found items taken from the burglarized house and footprints near the point of attempted entry which matched appellant's boots. We found this evidence was sufficient to sustain the conviction for attempted burglary.

A similar issue was addressed by this Court in *Bray v. State* (1982), Ind., 443 N.E.2d 310. In *Bray,* three men were apprehended for burglary of the Crawford house and attempted burglary of the Austin house. Two of Austin's neighbors identified defendant at a pretrial lineup as one of the men they saw at the house the evening of the crime and the accomplice testified that defendant pried open the door of Austin's house and entered the premises. On appeal, defendant acknowledged that the evidence established the element of breaking and entering, but maintained that it did not establish that he had a felonious intent contemporaneous with his entry. However, the accomplice also testified that "earlier in the day, defendant had asked [him] to drive [defendant] around so that he could commit some burglaries. The

Austin residence was selected by defendant because a newspaper way lying at its entrance." *Bray,* 443 N.E.2d at 315. Evidence of Bray's expressed purpose to burglarize homes, evidence he had already burglarized the Crawford house, and evidence he selected the Austin house as a target because of indications that the occupants were not home were sufficient to establish that the illegal entry and felonious intent occurred contemporaneously.

■ In the case at bar, the evidence adduced at trial to establish that appellant committed attempted burglary consisted of the pry marks at the place of entry, appellant's flight from the bait shop, and the footprints in the snow which the police tracked from the bait shop to appellant and co-defendant. In addition, appellant had already committed a burglary earlier that evening and was in the process of attempting to burglarize the bait shop when he was caught. The evidence is sufficient to establish that appellant intended to commit a theft of the bait shop when he broke and entered the building.

### III. Other Issues
#### A. Presence of Uniformed Officers

■ Appellant argues that the presence of uniformed officers in the courtroom and near the jury violated his right to an impartial jury. He maintains the trial court's denial of his motion to exclude uniformed officers did not provide the requisite explanation, citing *Williams v. State* (1976), 264 Ind. 664, 348 N.E.2d 623.

As trial commenced, Timmons moved that only plain clothes officers be permitted in the courtroom. The trial judge denied the motion, noting that most of the officers present would be in plain clothes anyway. At the request of defense counsel, the uniformed officers took up positions outside the courtroom.

The trial court must determine the necessity for security measures. In *Williams,* we indicated that "the judge should make a record of the arguments and his reason for permitting guards *beyond those customar-*

*ily employed.*" *Williams*, 348 N.E.2d at 631 (emphasis added). In the case at bar, the record does not indicate that any extraordinary security measures were employed. The trial court acted appropriately in denying defendant's motion.

### B. Change of Venue

Appellant argues that the trial court's refusal to grant a change of venue based on prejudicial publicity constituted an abuse of discretion.

Timmons' motion for change of venue claimed that adverse publicity and previous prosecutions in the county would preclude impaneling a fair and impartial jury. At a pretrial hearing on this motion, he testified that the newspaper printed an article about his arrest. The judge denied the motion but indicated he would reconsider if an unbiased jury could not be impaneled.

The mere possibility of prejudice is not enough to entitle an accused to a change of venue. *Drummond v. State* (1984), Ind., 467 N.E.2d 742. Defendant has the burden to show prejudice by demonstrating the existence of adverse publicity and that the potential jurors were unable to set aside their preconceived notions of guilt and render a verdict based upon the evidence. *Walker v. State* (1983), Ind., 444 N.E.2d 842. Timmons' bald assertions of prejudice do not satisfy this burden.

### C. Appointment of Special Prosecutor

Appellant appeals the trial court's denial of his motion for the appointment of a special prosecutor. His claim of prosecutorial prejudice was based upon the prosecutor's demeanor and tone of voice during a conference with Timmons a week after his arrest. At the sentencing hearing, Timmons also alleged that this prosecutor had earlier forced him to perjure himself at a prior trial of another defendant.

Neither of these claims satisfied the requirements of Ind.Code § 33–14–1–6 (Burns 1984 Supp.), which govern the appointment of special prosecutors.

### D. Psychiatric Examination

Appellant argues that the trial court erred by denying his motion for the appointment of a psychiatrist to determine whether he was competent to stand trial. He maintains that his pretrial behavior and prior psychological evaluations indicated the necessity for the examinations. The Court denied this motion, finding that the defendant had thus far "ably assisted his attorney in his defense and that he well understands and comprehends the proceedings and the Court having no basis upon which to believe that the defendant does not have the mental capacity to understand the proceedings and assist in his defense."

The trial court must hold a competency hearing when the court has reasonable grounds to believe that defendant lacks the ability to understand the proceedings and assist in the preparation of his defense. Ind.Code § 35–36–3–1 (Burns 1985 Repl.) A hearing is required by statute and due process only when there is evidence before the court that creates a reasonable or bona fide doubt as to defendant's competency. *Fine v. State* (1986), Ind., 490 N.E.2d 305. The court is required to appoint psychiatrists only after determining that reasonable grounds for the hearing exist.

The trial judge can observe a defendant's demeanor, including any uncooperative behavior, and determine defendant to be competent to stand trial. *Brown v. State* (1986), Ind., 485 N.E.2d 108. The trial court had an adequate basis for the determination that a competency hearing was not necessary.

### E. Mitigation of Sentence

Appellant argues that two statutory factors justified mitigation of his sentence: substantial grounds tending to excuse or justify the crime, though failing to establish a defense and action under strong provocation. He maintains that his drug abuse is a substantial factor and provoked the commission of the crimes.

■ The trial court is not obligated to attach weight to the defendant's evidence of mitigating circumstances. Rather, the weight accorded mitigating circumstances and the reduction of a sentence are discretionary with the trial court. *Perry v. State* (1983), Ind., 447 N.E.2d 599.

### IV. Sufficiency of Evidence—Habitual Offender

■ Appellant argues that the evidence presented by the State at the habitual offender proceedings is not sufficient to prove that he is the same person named in the documents used to establish prior felony convictions. Timmons also filed a "Citation to Additional Authority," claiming that the documentation presented by the State does not indicate when the alleged prior felonies were committed. We need not address his identity claim, as the evidence of the chronological sequence of the predicate felonies is not sufficient to support the habitual offender determination. We recently vacated an habitual offender determination upon grounds under circumstances similar to the case at bar. *Steelman v. State*, (1985), Ind., 486 N.E.2d 523. Writing for a unanimous Court, Justice DeBruler stated:

> However, in studying the record of proceedings for the purpose of resolving this issue, we have been confronted with a fundamental defect in the proof of sequence of the prior felonies that support the habitual offender determination, and thus the thirty year enhancement of appellant's sentence. This defect is of such a nature that it renders the evidence insufficient to support that determination.

*Steelman,* 486 N.E.2d at 525.

The documents offered by the State at the habitual offender proceedings do not indicate the date on which the predicate felonies were committed. This renders the evidence insufficient to support an habitual offender determination. Writing for the majority, Justice DeBruler held that this chronological sequence must be established by the State:

In *Miller v. State* (1981), 275 Ind. 454, 417 N.E.2d 339, this Court held:

> It is clear from the statute [Ind.Code § 35–50–2–8] that to sustain a sentence under it, the State must show that the defendant had been twice convicted and twice sentenced for felonies, that the commission of the second offense was subsequent to his having been sentenced upon the first and that the commission of the principal offense upon which the enhanced punishment is being sought was subsequent to his having been sentenced upon the second conviction. *Miller,* 417 N.E.2d at 342.

In the case at bar, the State has not presented any evidence as to the dates of the commission of the alleged prior felony convictions. As a result, there is no way to discern if the alleged prior felony convictions are in their proper statutory sequence.

*Steelman,* 486 N.E.2d at 526; *See also, Clark v. State* (1985), Ind., 480 N.E.2d 555, 560.

There is no way to discern if Timmons' prior convictions are in the requisite statutory sequence. This is a fundamental defect which renders the evidence insufficient to support the habitual offender determination. The habitual offender determination is vacated. The cause is remanded to the trial court with instructions to resentence Ronald Leon Timmons. *Williams v. State* (1986), Ind.App., 494 N.E.2d 1001.

The habitual offender finding is vacated and the cause remanded for a new sentencing hearing. The convictions and sentences imposed for the burglary and attempted burglary are affirmed.

DeBRULER and DICKSON, JJ., concur.

PIVARNIK, J., concurs and dissents with separate opinion in which GIVAN, C.J., concurs.

PIVARNIK, Justice, concurring and dissenting.

I concur in this opinion on all issues except the holding of the majority in Issue IV, in which it determined there was insuf-

ficient evidence to support the finding of habitual offender. This issue was not raised at any time during trial, in the Motion to Correct Error, or on appeal. All briefs were filed by December 18, 1984. After publication of our opinions in *Clark v. State* (1985), Ind., 480 N.E.2d 555, and *Steelman v. State* (1985), Ind., 486 N.E.2d 523, Appellant filed what he called Additional Citation to Authority, in which he raised this issue for the first time in May, 1986. I am mindful of the fact that a total lack of sufficiency is fundamental error which this Court can recognize *sua sponte,* and by which this Court can properly set aside the judgment of conviction. In doing so, however, it is our duty to examine and reconcile the evidence in a light most favorable to the one bearing the burden, to yield to the fact-finder in the weight and credibility to be given to the facts, and to determine if there were facts, and inferences from those facts, justifying the finding of the jury.

The only question raised by Appellant here with regard to sufficiency in the habitual offender phase of the trial was that he had not been properly identified on the 1975 theft conviction. Following the 1975 theft, Appellant fled to Georgia and apparently got involved with authorities there. He had given his name as Ronald Wade to the Georgia police. Warsaw City Police Chief, Eugene Brumfield, testified that the one arrested by Georgia police going by the name of Ronald Wade was Appellant, and directly identified him as such.

The issue of sequence of the commission of these crimes was not raised. Although it would have been better for the State to present direct evidence as to the date of the commission of each crime, it would appear that the sequence was so apparent that no one saw the need to do so. There is no question but what the first predicate felony, the theft, was committed prior to 1975 and the conviction and sentence came in 1975. Appellant received a two (2) year suspended sentence and two (2) years probation. The next series of crimes proved and discussed were a number of thefts and an escape from the jail. All of these, in-

cluding the escape, were class D felonies. Appellant was convicted of these crimes on May 16, 1980. Officer Holderman, a detective in the Sheriff's Department of Kosciusko County, testified that he was a detective during 1979–80, and knew Appellant to be the person named and convicted in the 1980 convictions because of his, Holderman's, association with the county jail and Sheriff's Department, and the fact that he saw the individual who was charged and convicted under these charges. There is certainly inference there that these matters came about in 1979 and 1980, particularly since one of the charges was an escape from that jail. The escape, as a matter of fact, was in 1979, a fact Appellant admitted to the probation officer and recited in the presentence report to the judge. The presentence report, of course, was not in evidence before the jury.

I fail to see grounds for us to make an independent search of the evidence and find insufficiency. To do so, we would have to find that the evidence equally inferred the 1980 convictions were committed prior to 1975. No such inferences are justified or apparent. I would affirm the trial court in all respects.

GIVAN, C.J., concurs.