Larry WILLIAMS, Appellant
(Petitioner Below),

v.

STATE of Indiana, Appellee
(Respondent Below).

No. 985S372.

Supreme Court of Indiana.

July 8, 1988.

Susan K. Carpenter, Public Defender, Paul Levy, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stephenson, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Appellant Larry Williams was indicted for murdering Jesse Hubbard at Hubbard's home in Plymouth. After a jury trial, Williams was convicted of murder, felony murder, conspiracy to commit armed robbery, and armed robbery. Williams was also found to be an habitual offender. The jury recommended the death penalty on the murder charge, and the trial court imposed it. The trial court also sentenced Williams to consecutive terms of 90 years in prison for felony murder, thirty years for conspiracy to commit armed robbery, and thirty years for armed robbery, with thirty years added by the habitual offender finding.

On direct appeal this Court affirmed except with respect to the sentence for felony-murder. We remand the cause to the trial court to vacate the latter. *Williams v. State* (1982), Ind., 430 N.E.2d 759. The United States Supreme Court dismissed Williams' appeal for want of a substantial federal question. *Williams v. Indiana* (1982), 459 U.S. 808, 103 S.Ct. 33, 74 L.Ed.2d 47.

Williams filed a petition for post-conviction relief, alleging several errors. The post-conviction court denied the petition. Because we now remand for a new death penalty hearing and imposition of a new sentence, we address only the following issues:

1) Whether Williams was denied due process when the State allegedly failed to reveal inducements made to a prosecution witness;

2) Whether trial counsel was ineffective during cross-examination of that witness, whom he had earlier represented in an unrelated matter;

3) Sufficiency of the habitual offender evidence;

4) Whether the trial court entered sufficient findings concerning aggravating circumstances to justify enhancing Williams' term of imprisonment; and

5) Whether the trial court's erroneous instruction during the penalty phase of the trial constituted harmless error.

Williams, as petitioner, had the burden of establishing his grounds for relief by a preponderance of the evidence. Rule PC 1, § 5, Ind. Rules of Procedure for Post–Conviction Remedies. To prevail on appeal from denial of post-conviction relief, Williams must show that the evidence as a whole leads unerringly and unmistakingly to a conclusion opposite to that reached by the trial court. *Williams v. State* (1987), Ind., 508 N.E.2d 1264.

*I. Disclosure*

Williams claims that the State denied him due process because it failed to disclose that the testimony of a prosecution witness, Ron Allen, was induced by threats from police officers and prosecutors. Williams characterizes the State's alleged conduct as a grant of immunity. He contends such a grant constitutes evidence favorable to the accused that is material to guilt or punishment which the State was required to disclose. *See Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215; *United States v. Bagley* (1985), 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481.

Allen was serving a prison sentence unrelated to the Hubbard murder at the time of the post-conviction hearing. At that

hearing, Allen testified that a police officer and two prosecutors had threatened to bring criminal charges or probation revocation proceedings against him if he did not testify at Williams' trial. This testimony conflicted with his earlier statements.

The officer and the two prosecutors described Allen as cooperative at the time of trial and denied threatening him. According to their testimony, Allen said he wanted to help police convict Hubbard's killer because the decedent had been kind to him. Other evidence, including Allen's own statements, showed that members of William's family had threatened Allen's life.

■ Assessing this evidence, Judge Donald Martin entered excellent findings of fact in ruling on Williams' post-conviction petition. Judge Martin found that Allen lied at the post-conviction hearing and that Allen had in fact cooperated with police in testifying at Williams' original trial. The evidence on this issue is in conflict and does not lead unerringly to a different conclusion. Therefore, we find no error.

## II. Ineffective Assistance of Counsel

Williams alleges that his trial counsel, Jere Humphrey, had a conflict of interest which rendered him ineffective within the meaning of the Sixth Amendment. U.S. Const. amend. VI. Specifically, Williams claims that Humphrey was unable to cross-examine Allen effectively because the attorney represented Allen in an earlier criminal proceeding.

■ To succeed on a claim of ineffective assistance of counsel, Williams had the burden of proving that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. He also was required to prove that counsel's failure to function was so prejudicial as to deprive him of a fair trial. To meet this burden, Williams had to overcome by strong and convincing evidence a presumption that counsel executed his defense effectively. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

■ The Sixth Amendment guarantees that the accused be represented not only by counsel satisfying at least a minimum standard of professional competency but also by counsel whose undivided loyalties lie with his client. *United States v. Jeffers* (1975), 7th Cir., 520 F.2d 1256. To establish a conflict of interest amounting to a Sixth Amendment violation, Williams must show that counsel actively represented conflicting interests which adversely affected his performance. *Aubrey v. State* (1985), Ind., 478 N.E.2d 70. The mere possibility of a conflict of interest is insufficient to justify reversal of conviction. *Bieghler v. State* (1985), Ind., 481 N.E.2d 78.

During the post-conviction hearing, Williams presented evidence that Humphrey, in his capacity as a public defender, had represented Allen when he pled guilty to burglary and auto theft a year before Williams' trial. Humphrey testified that he could not remember any details of Allen's case, and Williams did not question him further about the alleged conflict of interest. Williams presented no other evidence to establish a conflict of interest nor did he specify how the alleged conflict encumbered Humphrey's cross-examination of Allen during Williams' trial. Indeed, the trial record showed that Humphrey conducted a seemingly thorough cross-examination of Allen which included impeachment based on prior crimes and prior inconsistent statements. The post-conviction court ruled that Williams had failed to substantiate his claim of a conflict of interest.

In his brief, Williams relies on numerous cases involving an ongoing relationship between defense counsel or his associates and a witness adverse to the accused. Such cases are inapposite, inasmuch as Williams is alleging a conflict of interest based on defense counsel's *prior* representation of a State's witness. Under these circumstances, the Seventh Circuit has determined that two factors may interfere with effective cross-examination and consequently the effective assistance of counsel:

First is concern that the lawyer's pecuniary interest in possible future business may cause him to avoid vigorous cross-examination which might be embarrass-

ing or offensive to the witness. The second is the possibility that privileged information obtained from the witness might be relevant to the cross-examination.

*United States v. Jeffers* (1975), 7th Cir., 520 F.2d 1256, 1264–65 (footnote omitted).

The first factor is not significant in this case because Humphrey represented Allen as a public defender and Allen was incarcerated at the time of the hearing. It is highly unlikely that Humphrey would have limited his cross-examination simply because he believed Allen might provide lucrative business in the future. As for the second factor, Williams has failed to establish that Humphrey possessed any privileged information about Allen which might have prevented thorough cross-examination. If Humphrey ever had such information, he appeared to have forgotten it by the time of Williams' trial.

■ Williams has done no more than raise the possibility of a conflict of interest. The post-conviction court properly denied him relief on this issue.

### III. Habitual Offender Evidence

■ Williams argues that the habitual offender determination is not supported by sufficient evidence of the chronological sequence of the predicate felonies. He is correct.[1]

■ In an habitual offender proceeding, the State must prove that the defendant was convicted and sentenced for two prior unrelated felonies. Ind. Code § 35–50–2–8. The State must prove that the commission, conviction and sentencing on the first felony preceded the commission of the second felony. The State must further prove that the defendant committed the principal offense after he was sentenced on the second prior felony. *Timmons v. State* (1986), Ind., 500 N.E.2d 1212.

■ The habitual offender information alleged that Williams had been convicted of

burglary and theft on September 24, 1976, and entering to commit a felony on October 20, 1976. The State did not prove the date on which either offense was committed. The State's evidence did show, however, that the information for entering to commit a felony was filed on August 19, 1976, more than a month before his burglary and theft conviction. Obviously, Williams committed the illegal entering before he was convicted and sentenced on the charges of burglary and theft in September 1976. Thus, the prior convictions clearly did not occur within the requisite statutory sequence. The habitual offender determination and corresponding 30–year enhancement must be vacated.

### IV. Findings to Justify Consecutive Sentences

Williams argues that the trial court failed to enter a statement of reasons to justify its order that his sentences for robbery and conspiracy be served consecutively. The trial court's original order recited general justifications for consecutive sentences, the especially heinous nature of the crimes and the court's conclusion that any lesser sentence would depreciate their seriousness.

While Williams' case was pending on direct appeal, this Court directed the trial court to issue a more specific set of findings concerning the imposition of the death penalty. The trial court responded with a detailed order outlining the brutal nature of Williams' actions, supporting the same general conclusions contained in the original sentencing order. We are satisfied from these entries that the trial court's order of consecutive sentences was appropriate.

### V. Death Penalty Hearing

Williams claims the trial court improperly instructed the jury during the death penalty hearing. After specifying the ag-

---

1. The State argues that Williams waived this issue by failing to raise it on direct appeal. Where the record of the habitual offender proceeding clearly shows inadequate proof with regard to the chronological sequence of the underlying felonies, however, we consider such error to be fundamental. *Timmons v. State* (1986), Ind., 500 N.E.2d 1212.

gravating and mitigating circumstances, the trial court instructed the jury:

If the State failed to prove beyond a reasonable doubt the existence of at least one (1) aggravating circumstance, or if you find that any mitigating circumstances outweigh the aggravating circumstances, you should not recommend the death penalty.

If the State did prove beyond a reasonable doubt the existence of one (1) aggravating circumstance, and you further find that such aggravating circumstances outweigh any mitigating circumstances, you should recommend that the death penalty be imposed.

Ind.Code § 35–50–2–9(e)(2) provides that the jury may recommend the death penalty only if it finds "[t]hat any mitigating circumstances that exist are outweighed by the aggravating circumstance or circumstances." The instruction given in this case provides that the jury *should* recommend the death penalty under such circumstances. Williams claims that the use of the word "should," instead of "may," constitutes reversible error.

While acknowledging that the instruction was incorrect, the post-conviction court ruled that it constituted harmless error. The court reasoned that the word "should" did not appreciably change the nature of the jury's duty under the statute and that, in any case, the trial judge was not required to follow the recommendation of the jury regarding the death penalty.

■ Clearly, the instruction was erroneous, and it compromised the reliability of the jury's recommendation. By holding such error harmless, the post-conviction court in effect determined that the jury's recommendation would have had little or no effect on the trial court's deliberations regarding the death penalty. That assumption is incorrect.

Ind.Code § 35–50–2–9(d) requires that the jury hear evidence concerning the death penalty. The statute requires that the trial court consider the jury's findings when deciding whether to impose the death penalty. The jury's conclusion is a recommendation which the trial court is not re-

quired to follow. Ind.Code § 35–50–2–9(e). It seems unlikely, however, that the legislature would specifically require the trial court to consider the jury's recommendation if that consideration amounted only to an order book entry noting the recommendation. This Court regards the practical effect of the jury's recommendation in a death penalty case as significant:

Notwithstanding that the sentence determination by the jury is not binding upon the judge, we do not regard it as a mere formality having no substantive value. If we did, error if any, in such regard could not be other than harmless. On the contrary, the recommendation of the jury is a very valuable contribution to the process, in that it comes from a group representative of the defendant's peers, who are likely to reflect, collectively, the standards of the community.

*Brewer v. State* (1981), 275 Ind. 338, 417 N.E.2d 889, 909, *cert. denied,* 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384.

This case presents a variation on the question confronted in *Burris v. State* (1984), Ind., 465 N.E.2d 171, *cert. denied,* 469 U.S. 1132, 105 S.Ct. 816, 83 L.Ed.2d 809. The instruction in *Burris* told the jury it "may" recommend death if the State met its burden. It also informed the jury that it "may" recommend against the death penalty if the State failed to meet its burden. While the first directive was a correct statement of the law, the second was not. It should have informed the jury that it "shall" recommend against the death penalty if the State failed to meet its burden. This Court held the error harmless.

In *Burris,* the jury recommended death. The jury must have found that the State proved the aggravating factors and that the aggravating factors outweighed any mitigating circumstances. The directive in the instruction guiding the jury in this respect was correct. The error in the second part of the instruction was harmless because the jury's recommendation in favor of death would not have been affected by an erroneous instruction concerning how they should proceed in the event they concluded the State had not met its burden.

The same is not true of the erroneous instruction given at William's trial. The instruction could have misled the jury into incorrectly recommending the death penalty. The error related to an instruction in favor of the death penalty and not against it as in *Burris*. The instruction directed the jury to return a recommendation of death even if the jury felt the sentence was inappropriate. The jury is not required to return a recommendation for the death penalty even if the State proves that the aggravating factors outweigh the mitigating circumstances. Ind.Code § 35–50–2–9(e). While the jury "may" recommend the death penalty, it does not have to do so. The import of the principle in *Burris* is that the erroneous instruction requires a new sentencing hearing.

The judgment of the post-conviction court is affirmed in part and reversed in part. The habitual offender determination and enhancement are reversed. The findings and order imposing the death penalty are vacated. The judgment of the trial court imposing consecutive sentences of thirty years for conspiracy and thirty years for armed robbery are affirmed.

This cause is remanded to the trial court for a new death penalty hearing and imposition of a new sentence.

DeBRULER, GIVAN and DICKSON, JJ., concur.

PIVARNIK, J., concurs except in the finding by the majority that a new death penalty hearing is required. He would affirm the trial court on this issue. Even though the word "should" was improper, the trial court was capable of weighing all factors and *he* imposed the sentence.