Steven L. EADS, Appellant,

v.

STATE of Indiana, Appellee.

No. 28S00–8810–CR–85.

Supreme Court of Indiana.

Sept. 4, 1991.

James W. Boswell, Terre Haute, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Murder, for which he received a sentence of forty (40) years; Conspiracy to Commit Burglary, a Class A felony, for which he received a sentence of ten (10) years to be served concurrently with the sentence on the murder conviction; Theft, a Class D felony, for which he received a sentence of two (2) years; and Possession of Marijuana, a Class D felony, for which he received a sentence of two (2) years, said sentences to be served consecutively to each of the preceding sentences, making a total sentence of forty-four (44) years.

The facts are: On the evening of Friday, August 28, 1987, appellant and Ronald Adkins drove to a park across the street from the Amoco gasoline station in Bloomfield, Indiana. Ronald Adkins testified that they stopped at this park across the street from the station so that they could scout the station and watch for police cars to go by. According to Adkins, when the two men left for Bloomfield that evening they had already decided to burglarize the gas station. Adkins stated that his girlfriend and appellant first approached him with the idea of this burglary. After some traffic had cleared, they drove from the park into a parking lot near the service station and parked, and after determining that the rear door of the building was locked, appellant climbed onto an air conditioner adjacent to the building and peered through a window.

Moments later, appellant and Adkins heard a gunshot and saw Milfred Holtsclaw, the owner of the service station, holding a gun. Appellant fled into a nearby field. Adkins ran to his truck, and Holtsclaw fired a second shot. Adkins retrieved a .30 caliber rifle from his truck and fatally shot Holtsclaw. Both men acknowledge that the rifle was removed from the trailer home in which they were residing and placed in the truck just before their departure for Bloomfield. Adkins testified that it was appellant who placed the rifle in the truck. Appellant, on the other hand, testified that it was Adkins who put the rifle in the truck as he stated that Adkins always took his rifle with him wherever he drove and this trip was no exception. After Adkins fired his shot, appellant returned to the truck and the two men fled the scene. As they left, Adkins advised appellant that he had shot Holtsclaw.

Shortly thereafter, they stopped at a filling station where they put approximately seventeen gallons of gasoline into the truck and fled without paying. Authorities were notified, and the men were apprehended by Vincennes police officers. During a search of the truck, marijuana was confiscated.

Appellant claims the trial court erred when it denied his motion for change of venue. He based his motion on the fact that a lengthy newspaper article, complete with pictures, was published in a local newspaper at the time the men were arrested for the crimes. This publication appeared on September 1, 1987. A copy of the publication appears in the transcript. An examination indicates that it is a usual journalistic account of a crime. The story

includes what purports to be incriminating statements made by the two men.

■ Appellant claims that he was entitled to a change of venue based upon the inflammatory news article and the prejudice it would create in a small community. He cites the case of *Rideau v. Louisiana* (1963), 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663. However, in the *Rideau* case, movies were taken of the confession of the defendant and then were telecast by the local television stations. The Supreme Court of the United States held:

> "[T]his spectacle, to the tens of thousands of people who saw and heard it, in a very real sense *was* Rideau's trial—at which he pleaded guilty to murder. Any subsequent court proceedings in a community so pervasively exposed to such a spectacle could be but a hollow formality." *Id.* at 726, 83 S.Ct. at 1420, 10 L.Ed.2d at 665.

In the case at bar, we have no such dramatic episode. The article about which appellant complains and which is made a part of this record was published on September 1, 1987. The trial did not commence until May 4, 1988.

An examination of the *voir dire* of the prospective jurors discloses that many of them spoke of reading articles in the newspaper and hearing comments on television and radio. However, in almost every instance, the prospective jurors indicated that it had been quite some time since they had heard any news on the subject, and in almost every case, the jurors said that the news they had heard would not influence their decision and that they in fact could not remember the details of the crime. A great many of them did know the victim, at least by name, as he appears to have been a prominent person in the community. However, even at that, most of them said that they merely knew of him and did not know him personally.

Appellant also cites *Irvin v. Dowd* (1961), 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751, wherein the Supreme Court held that undue publicity in the community, prior to and during the trial, was so great and detrimental to Irvin that a fair trial was virtually impossible. However, in that case, the publicity was extreme, and the news media constantly projected the image that Irvin was guilty and should be convicted. This type of pervasive publicity continued throughout the trial. Such is not the situation in the case at bar.

In the instant case, we see nothing in this record to indicate any conduct on the part of the news media other than the factual reporting of a homicide and the capture of the alleged perpetrators. In the *Irvin* case, the *voir dire* of the jury indicated that many of them had been subjected to the continuing barrage of the news media and the publicity had caused them to form an opinion as to Irvin's guilt. Some of those who sat as jurors in deliberation of his case had so stated but had indicated they could set that opinion aside and decide the case according to the facts presented by the State. However, the Supreme Court observed that it was unrealistic to ask jurors to attempt such an exercise.

In the case at bar, we do not have such a situation. We see nothing in this record to indicate reversible error in the court's refusal to allow a change of venue.

■ Appellant contends the trial court erred when it denied his motion for sequestration of the jury. For the reasons above recited, we see nothing in this record to indicate any undue or unfair publicity during the trial of this case. Throughout the trial, the court admonished the jury that they were not to read, to listen, or to watch media coverage of the trial, and that they were to make their decision solely upon the evidence presented in court. We find nothing in this record to indicate that the jury in any way violated the court's admonition. We see no reversible error in the court's refusal to sequester the jury.

■ Appellant claims the trial court erred when it imposed a total executed sentence of forty-four (44) years. He contends such a lengthy sentence is manifestly unfair. In passing sentence upon appellant, the trial judge recited facts of the case, found that appellant was not the triggerman, and stated that he was entitled to

receive a presumptive sentence rather than an enhanced sentence.

The trial judge further pointed out that appellant's confederate, who had been the triggerman, already had received an enhanced sentence of sixty (60) years. The trial judge was very careful in articulating his reasons for imposing the sentence of forty (40) years for the murder. He also was articulate in stating why the sentence for the conspiracy to commit burglary should be the presumptive term and why it should be served concurrently with the sentence for murder.

■ With regard to the convictions for theft and possession of marijuana, the trial judge stated that appellant's prior criminal history and his flight to avoid prosecution were aggravating circumstances; therefore, he was ordering those sentences to be served consecutively to the other sentences. The trial judge complied with Ind. Code § 35-38-1-7 and the various cases decided under that statute. *See e.g. McVey v. State* (1988), Ind., 531 N.E.2d 458 and *Floyd v. State* (1987), Ind., 503 N.E.2d 390. We see nothing in this record to indicate that the trial judge abused his discretion in sentencing appellant. *See Timmons v. State* (1986), Ind., 500 N.E.2d 1212.

■ Appellant claims the evidence in this case does not support the verdict of the jury finding him guilty of the crime of felony murder. From the facts above recited, the jury was entitled to find that appellant was involved in the conspiracy to commit a burglary and that a homicide resulted from the perpetration of the burglary. Where, as here, a homicide is committed in the perpetration of a felony to which the defendant is an accessory, he may be convicted of felony murder. Ind.Code §§ 35-42-1-1 and 35-41-2-4; *Spurlock v. State* (1987), Ind., 506 N.E.2d 40.

The evidence is sufficient to show that appellant was an accomplice who acted in concert with the actual triggerman. It thus is sufficient to support the conviction on the basis that appellant was an accessory. *Fox v. State* (1986), Ind., 497 N.E.2d 221. The fact that appellant did not shoot the victim and claims that he did not foresee or intend that the shooting would occur does not relieve him of liability under the felony murder doctrine. *Ford v. State* (1988), Ind., 521 N.E.2d 1309.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, DICKSON and KRAHULIK, JJ., concur.