## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 26 2020, 12:08 pm

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Elizabeth A. Flynn
Braje Nelson & Janes, LLP
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tara Louise Crump,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | June 26, 2020<br><br>Court of Appeals Case No.<br>20A-CR-91<br><br>Appeal from the LaPorte Superior Court<br><br>The Honorable Michael S. Bergerson, Judge<br><br>Trial Court Cause No.<br>46D01-1905-F4-561 & 46D01-1802-F4-143 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Tina Crump (Crump), appeals following her conviction for possession of methamphetamine, a Level 4 felony, Ind. Code § 35-48-4-6.1(a), (c)(1).

We affirm.

# ISSUES

Crump presents the court with two issues, which we restate as:

(1) Whether the trial court abused its discretion in denying Crump's counsel's motion for a competency evaluation; and

(2) Whether the State proved beyond a reasonable doubt that she possessed methamphetamine.

# FACTS AND PROCEDURAL HISTORY

In the early spring of 2019, Crump was introduced to Larry Jackson (Jackson) by her friend Ashley Eddie (Eddie). Eddie had been dealing drugs in La Porte County and had been dating Jackson. Jackson assisted Eddie in dealing drugs and met her supplier in South Bend, who was known as Trip. When Eddie's home was raided in March of 2019 and she was arrested, Jackson took over Eddie's drug dealing contacts. Jackson also took over the care of Eddie's eight-year-old son. Crump provided babysitting services for Jackson, and, in April of 2019, Jackson moved into Crump's home in La Porte.

On May 3, 2019, Crump indicated to Jackson that she wanted him to procure some methamphetamine for her. The $200 purchase money was to comprise $100 that Jackson owed Crump for babysitting and another $100 supplied by a friend of Crump's. Later that day, Jackson drove Crump in his pickup truck to a Dollar Store parking lot in South Bend where he purchased 14.05 grams of methamphetamine from Trip. On the return trip to La Porte County, Deputy Jonathan Samuelson (Deputy Samuelson) of the La Porte County Sheriff's Office observed Jackson commit a traffic violation on Highway 20. Deputy Samuelson initiated a traffic stop and had his canine partner perform an open-air sniff of the truck. The canine officer alerted at the driver's-side door. Deputy Samuelson removed Jackson and Crump from the truck, and during the subsequent search, a baggie of methamphetamine was found in plain view in the center of the driver's-side floorboard. A backpack containing unused baggies and a drug ledger was found behind the driver's side seat, a digital scale was found on the passenger seat next to Crump's purse, and three cell phones were found in Crump's purse. After receiving her *Miranda* advisements, Crump gave a statement to investigators in which she denied having traveled to South Bend that day.

On May 6, 2019, the State filed separate Informations, charging Crump and Jackson with Level 4 felony possession of methamphetamine. In his initial statement to law enforcement after his arrest, Jackson denied any involvement with the May 3, 2019, drug transaction. In a later statement to law enforcement, Jackson admitted that he was also involved in the transaction.

Jackson subsequently pleaded guilty to the Level 4 felony charge as part of an agreement with the State that he would receive a three-year sentence that would not be served in prison and he would testify truthfully at Crump's trial. Approximately one week before Crump's trial in a meeting with the prosecutor, Jackson attempted to change details of his proposed testimony because he was scared that he would face retaliation from Eddie and Crump.

[7] On October 28, 2019, Crump's counsel filed a verified motion seeking a competency evaluation for Crump in which he averred that Crump was "manic, irate, and irrational" when he attempted to confer with him, which he attributed to Crump not having had the benefit of psychotropic medications. (Appellant's App. Vol. II, p. 111). Crump's counsel also averred that Crump was unable "to rationally reconstruct the chronology of events leading to her arrest[.]" (Appellant's App. Vol. II, p. 111). On October 31, 2019, the trial court held a final pre-trial conference in which it addressed the competency evaluation motion. The trial court judge was familiar with Crump's mental health history because he had presided over several emergency commitment proceedings for her in the past. Crump's counsel reiterated the substance of his written motion and commented that, although he thought that Crump was capable of understanding the proceedings, her mental state affected her ability to talk to him about the proceedings effectively. Crump, who was present in court, acknowledged that she had experienced mental health issues in the past, denied that she was manic at present, and stated that "I'm definitely I'm more mentally stable now than I have ever been." (Transcript Vol. II, p. 4). Crump

was upset about her situation because she maintained that she was innocent. Regarding her trial counsel, Crump related that

> [w]hen he comes, he doesn't even um, he'll – he's only came and visited me like twice and he comes with a plea, and I get upset and – 'cause I told 'em I -- there's no discussing this, I don't – I want to go to trial.

(Tr. Vol. II, p. 4). Crump had asked her counsel to depose Jackson, to perform DNA testing, and to provide her with copies of her phone records but had not received a response from him. Crump stated that "I gave him a list of everything I needed for the trial" and "I've been doing everything I needed for the trial. I've, I've been doing everything on my part, but I'm getting no response from him." (Tr. Vol. II, p. 5). In response to the trial court's question if she knew why she was in court that day, Crump explained that it was a final pre-trial conference before her trial scheduled on November 13, 2019, for her charge of Level 4 felony drug possession. Crump confirmed to the trial court that, despite her counsel's request to have her competency evaluated, she wished to proceed to trial. The trial court denied the competency evaluation motion, observing that "based on my familiarity with [Crump], this is as, as clear as I believe she's ever been." (Tr. Vol. II, p. 7). The trial court explained to Crump that after the conclusion of the hearing, she would only be allowed to plead as charged in the Information. Crump assured the trial court that she understood but that she would prefer to stand trial in light of her innocence.

[8] On November 12, 2019, the trial court convened Crump's two-day jury trial. Jackson testified that on May 3, 2019, he returned to his truck after purchasing the methamphetamine from Trip and placed the baggie containing the methamphetamine in the truck's cupholder. Crump then picked up the baggie from the cupholder and placed it in her purse. According to Jackson, when Deputy Samuelson initiated the traffic stop, Crump panicked, retrieved the baggie from her purse, and threw it in Jackson's direction. The baggie had landed on the driver's side floorboard where it was later found during the search. Jackson testified on direct and cross-examination that he had lied to law enforcement and the prosecutor at various times during the case. Jackson also admitted that he had not yet been sentenced in his own case. Crump's statement in which she denied having travelled to South Bend on May 3, 2019, and copies of Crump's cell phone location records indicating that she had travelled to South Bend that day were admitted into evidence. The jury found Crump guilty as charged.

[9] On December 12, 2019, the trial court held Crump's sentencing hearing. The trial court sentenced Crump to six years to be executed with the Department of Correction. The trial court's sentencing order provided that Crump could petition for a modification of her sentence upon completion of substance abuse treatment.

[10] Crump now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Competency Evaluation*

Crump argues that the trial court abused its discretion when it denied her counsel's motion for a competency evaluation. A trial court judge has an opportunity to observe a defendant's demeanor first-hand to determine if she is competent to stand trial. *Timmons v. State*, 500 N.E.2d 1212, 1217 (Ind. 1986). As such, it is within the trial court's sound discretion to determine if a competency evaluation should be performed, and we will review the trial court's determination only for an abuse of that discretion. *Cotton v. State*, 753 N.E.2d 589, 591 (Ind. 2001).

A defendant has a due process right not to be tried on a criminal charge while she is incompetent. *Wallace v. State*, 486 N.E.2d 445, 453 (Ind. 1985). A defendant may not stand trial if she lacks the present ability to consult with her counsel with a reasonable degree of rational understanding or lacks a rational and factual understanding of the proceedings. *Gross v. State*, 41 N.E.3d 1043, 1047 (Ind. Ct. App. 2015). This due process right is effectuated by Indiana Code section 35-36-3-1(a), which provides that a trial court shall have a defendant evaluated and hold a competency hearing if the court "has reasonable grounds for believing that the defendant lacks the ability to understand the proceedings and assist in the preparation of a defense[.]" A review of a defendant's competency is only required when the trial court is confronted with evidence creating a *bona fide* doubt regarding the defendant's competency. *Barber v. State*, 141 N.E.3d 35, 44 (Ind. Ct. App. 2020), *trans.*

*denied*. The trial court judge's observations of a defendant in court can serve as an adequate basis for finding that a competency hearing is not necessary. *Cotton*, 753 N.E.2d at 591.

[13]     Crump does not contend that she was incapable of understanding the proceedings. Rather, she argues that the trial court's knowledge of her previous mental health issues, her statements at the hearing that she was unmedicated, the concerns expressed by her attorney, and her demonstrated inability to "stay on track" when questioned by the trial court showed that she was unable to assist in the preparation of her defense. (Appellant's Br. p. 17). In addressing Crump's arguments, we find *Beesley v. State*, 533 N.E.2d 112 (Ind. 1989) to be instructive. In that case, our supreme court found no abuse of the trial court's discretion in denying a request for a competency evaluation where Beesley had been before the trial court on multiple previous occasions and had done legal research in preparation for trial, including speaking to witnesses. *Id*. at 113. The court also noted that, at the hearing on the request for evaluation, Beesley told the trial court that he thought he was competent and could assist in the preparation of his case; he was coherent, answered questions posed to him, and understood the charges; and he "had communicated with his attorney." *Id*.

[14]     Here, as in *Beesley*, the trial court judge had a history of contacts with Crump which served as a frame of reference for his determination that an evaluation was not necessary. Indeed, we agree with the State that the judge's experience presiding over previous emergency commitments for Crump gave him particularized insight to support his finding that she was "as clear as I believe

she's ever been." (Tr. Vol. II, p. 7). The need for a competency evaluation is assessed as of the time of trial. *Edwards v. State*, 902 N.E.2d 821, 827 (Ind. 2009). Therefore, it would have been an abuse of the trial court's discretion to rely on the fact that Crump had previously been committed to establish her fitness at the time of trial. Additionally, like Beesley, Crump had worked on her own case and had actively participated in the preparation of her defense by preparing a list of things she wanted done and sharing it with her counsel. At the hearing on the competency evaluation motion, Crump indicated that she understood the proceedings, answered the trial court's questions appropriately, denied that she was presently experiencing mental health issues, and urged the trial court that she wished to proceed to trial. Following *Beesley*, we cannot say that the trial court abused its discretion when it denied the competency evaluation motion. *Beesley*, 533 N.E.2d at 113.

[15] We also reject Crump's argument that her lack of medication merited a competency evaluation. Although she may have been medicated in the past, there was no evidence before the trial court that she was presently prescribed medication that she was not taking. Neither did her counsel's concerns, as expressed in his motion and at the hearing, mandate that the trial court grant the competency evaluation motion. The evidence before the trial court was that Crump maintained her factual innocence and was adamant about going to trial. As she explained at the hearing, Crump was upset when her counsel approached her with a plea agreement, and she was dissatisfied with the fact that her counsel had not prepared her defense as she wished. It was within the

trial court's discretion to determine that Crump was at most *unwilling* to communicate with her counsel fully at times but not that she was *incapable* mentally of doing so. Regarding what she contends was her inability to stay focused sufficiently to assist in her defense, the trial court questioned Crump at the hearing and was in the best position to observe Crump's demeanor to determine if she was capable of staying on task for purposes of assisting in her defense. Given the deference that we accord the trial court's observations of a defendant's demeanor in court, we will not second-guess the trial court's determination. *See Cotton*, 753 N.E.2d at 591; *Timmons*, 500 N.E.2d at 1217.

## II. *Sufficiency of the Evidence*

[16] Crump also challenges the sufficiency of the evidence supporting her conviction. It is well-established that when we review the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is not our role as an appellate court to assess witness credibility or to weigh the evidence. *Id.* We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.*

[17] In order to prove the offense, the State was required to show that Crump knowingly or intentionally possessed between ten and twenty-eight grams of pure or adulterated methamphetamine without a valid prescription. *See* I.C. § 35-48-4-6.1(a), (c)(1). Crump argues that the State did not prove that she possessed the methamphetamine found in the truck. Possession of contraband

can be actual or constructive. *Houston v. State*, 997 N.E.2d 407, 409-10 (Ind. Ct. App. 2013). Actual possession occurs when a defendant exerts direct physical control over the contraband. *Sargent v. State*, 27 N.E.3d 729, 733 (Ind. 2015).

[18] Here, Jackson testified that on May 3, 2019, after he purchased the methamphetamine from Trip, he placed it in the cupholder of the truck and that Crump picked it up and put the baggie of methamphetamine in her purse. This evidence established that Crump actually possessed the methamphetamine. The fact that she subsequently divested herself of possession of the methamphetamine does not render the evidence of her actual possession insufficient. *See, e.g.*, *Womack v. State*, 738 N.E.2d 320, 324 (Ind. Ct. App. 2000) (finding sufficient evidence of marijuana possession where, during a pursuit on foot, an officer observed Womack reach into his pocket and toss what was later determined to be a packet of marijuana), *trans. denied*.

[19] Crump does not address the substance of Jackson's testimony showing her actual possession of the methamphetamine, and she contends that this is a constructive possession case. She argues that "Jackson repeatedly lied about the circumstances and always exaggerated Crump's involvement in the transaction" and that, therefore, Jackson was not a reliable witness. (Appellant's Br. p. 23). However, the jury was made aware of Jackson's changing statements and his plea agreement. The jury also heard Crump's obviously-false statement to law enforcement that she had not travelled to South Bend on the day in question. The jury evaluated this evidence and decided that Jackson was more credible. Crump now essentially requests that

we ignore the evidence that supports the jury's verdict and reweigh the credibility of the witnesses in this case. This is an unavailing argument, as it is contrary to our standard of review. *See Drane*, 867 N.E.2d at 146.

# CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion when it denied Crump's counsel's motion for a competency evaluation. We also conclude that the State proved beyond a reasonable doubt that Crump possessed methamphetamine.

Affirmed.

Mathias, J. and Tavitas, J. concur